727 So.2d 341 (1999)
SHANDS TEACHING HOSPITAL AND CLINICS, INC., Appellant,
v.
HUMANA MEDICAL PLAN, INC., a Florida Corporation, Appellee.
No. 98-1661.
District Court of Appeal of Florida, First District.
February 18, 1999.
*342 William G. Christopher and Carolyn F. McDevitt of Brown Clark, P.A., Sarasota; and David A. Roberts, III, Gainesville, for Appellant.
Amy D. Shield of Haliczer, Pettis & White, P.A., Ft. Lauderdale, for Appellee.
*343 BROWNING, J.
Shands Teaching Hospital (Shands) appeals an order granting Humana Medical Plan's (Humana) motion to dismiss Shands' first amended complaint, without prejudice, for lack of subject matter jurisdiction, and denying Shands leave to file a second amended complaint. After a review of the pertinent state and federal statutes, regulations and case law, we conclude that the trial court has subject matter jurisdiction. Accordingly, we reverse the order of dismissal and remand for further proceedings consistent with this opinion.

Facts
Humana is a licensed Health Maintenance Organization (HMO) that operates a Medicare HMO pursuant to a contract with the United States Department of Health and Human Services, Health Care Financing Administration (HCFA), (the Humana-HCFA contract). The Humana-HCFA contract was entered pursuant to the Social Security Act, 42 U.S.C. § 1876. The terms of the Humana-HCFA contract require that Humana comply with the laws, regulations, and general instructions of the Secretary of the Department of Health and Human Services (HHS) that concern the participation of HMOs in the Medicare program.
Under the Humana-HCFA contract, Humana provides basic and supplemental health insurance to its enrollees. Its enrollees forfeit traditional Medicare coverage and become insured, instead, under Humana's Medicare HMO. Humana's Medicare HMO enrollees occasionally require care outside Humana's network and, from time to time, Humana has referred its enrollees to Shands for treatment.
Shands operates a hospital under the prospective payment system (PPS) for treatment of Medicare-eligible enrollees. It does not have a formal contract arrangement with Humana, and is thus considered a non-plan provider. The Humana-HCFA contract provides that a non-plan provider is entitled to payment from a Medicare HMO for each referred patient in the same amount Medicare would pay the non-plan provider under PPS based on the patient's diagnosis-related groups (DRGs). This amount includes, but is not limited to, hospital specific add-ons for capital and direct medical education expenses (DMEs). From August 1992 through April 1996, Humana referred 24 of its Medicare HMO enrollees to Shands for care outside its HMO network, and Shands provided such care.
Shands billed Humana for the Medicare reimbursement amount for each patient. Humana paid Shands the majority of the amount due, but did not include payment for DMEs. However, Humana received payment from Medicare for extending coverage to its HMO enrollees based on the amount Humana was required to reimburse its non-plan providers, including payment for DMEs.
Based on the foregoing, Shands alleged it was entitled to recover the DMEs under state common law contract theories of intended third-party beneficiary and unjust enrichment. Humana filed a motion to dismiss the complaint or grant summary judgment because the trial court lacked subject matter jurisdiction. As grounds, Humana stated 42 U.S.C. § 405(g) and 42 C.F.R. § 417.636 provided exclusive federal court jurisdiction, and that Shands had failed to exhaust its federal administrative remedies. The lower court entered an order dismissing the amended complaint for lack of subject matter jurisdiction, finding the claims could be brought only pursuant to the terms of federal statutes and the federal code of regulations. Shands filed a motion for rehearing, motion for leave to file amended complaint, motion for entry of final judgment, and simultaneously filed a second amended complaint. After hearing on the motions, the lower court entered an amended final order of dismissal without prejudice for Shands to proceed in federal court, and denied the motion for rehearing and motion for leave to amend. This appeal ensued.

Establishing Federal Subject Matter Preemption
Humana argues that Shands' contract claims fall within the provisions of the Social Security/Medicare laws, that those laws provide the exclusive remedy for the claims asserted, and that federal statutes and regulations provide the federal court with *344 exclusive jurisdiction. Because their argument is federal subject matter preemption, Humana bears the burden of establishing preemption was the clear and manifest purpose of Congress. Pennsylvania Medical Soc. v. Marconis, 942 F.2d 842, 846 (3d Cir. 1991), see also Pacific Gas & Elec. v. State Energy Resources Comm'n, 461 U.S. 190, 206, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).
Federal case law provides that Congressional intent, whether explicitly stated or implicitly contained in the structure or purpose of a statute, determines whether a law of the United States preempts regulation by the states of the same subject matter. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In the absence of express Congressional command, state law is preempted only (1) if it actually conflicts with federal law, or (2) federal law so thoroughly occupies a legislative field by a pervasive and complex regulatory system as to make reasonable inference that Congress left no room for the states to supplement it. Id. at 526, 112 S.Ct. 2608, citing Fidelity Federal Sav. & Loan Assn. v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). "The Medicare statutes, as applied to an HMO contract, do not contain a preemption provision." Ardary v. Aetna Health Plans of California, Inc., 98 F.3d 496, 501-502 (9th Cir.1996). In fact, "the first section of the Medicare Act explicitly states [Congress'] intent to minimize federal intrusion in the area." Massachusetts Medical Soc. v. Dukakis, 815 F.2d 790 (1st Cir.1987), citing 42 U.S.C. § 1395. Section 1395 provides:
Nothing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any institution, agency, or person providing health services, or to exercise any supervision or control over the administration or operation of any such institution, agency, or person.
Thus, while there is no express intention by Congress to preempt the Medicare field, there is express Congressional intent to prohibit federal interference in the delivery of health care services to the aged. 42 U.S.C. § 1395.
In the absence of express preemption, Humana has the burden of establishing that Congress implicitly intended preemption through pervasive regulation. Cipollone, 505 U.S. at 516, 112 S.Ct. 2608. However, a review of the federal statutes and regulations cited by Humana reveal that it fails to meet its burden of proof in this particular.

Exclusive Federal Jurisdiction
Humana cites 42 U.S.C. § 405(g) and 42 C.F.R. § 417.636 for the proposition that the federal court has exclusive jurisdiction. However, the cited statutes and regulations are inapplicable to Shands. They apply to an individual's right to judicial review of a final decision by the Commissioner of Social Security with regards to entitlement to Social Security benefits; and, beneficiary appeals, whereby a party or an HMO may request judicial review of Administrative Law Judge or Department of Appeals Board decisions, respectively. A party is defined under 42 U.S.C. § 417.610 as:
(a) The enrollee;
(b) An assignee of the enrollee (that is, a physician or other supplier who has provided a service to the enrollee and formally agrees to waive any right to payment from the enrollee for that service);
(c) The legal representative of a deceased enrollee's estate; or
(d) Any other entity determined to have an appealable interest in the proceeding.
It is clear Shands does not fall within the first three categories. Although it may appear at first blush that Shands falls into the last category, an entity determined to have an appealable interest, that impression is inaccurate. Significantly, 42 C.F.R. § 417.604, provides:
Physicians and other individuals who furnish services under arrangement with an HMO have no right of appeal under this subpart, except as provided in §§ 417.609(c)(4) and 417.617(c)(4), which allow physicians and other health care professionals to act on behalf of an enrollee in *345 time-sensitive situations when an organization determination or reconsideration is being requested. (Emphasis added).
In this case, Shands is not acting on behalf of an enrollee. Thus, Shands does not fall within the definition of a party entitled to appeal under § 417.610 and, under § 417.604, Shands is expressly precluded from federal appeal.
Humana also cites Redmond v. Secure Horizons, 60 Cal.App.4th 96, 70 Cal.Rptr.2d 174 (1997), for the proposition that the federal court has exclusive jurisdiction because the action arises under the Medicare Act. Redmond is distinguishable from the case at bar because Redmond deals with an enrollee suing an HMO for breach of contract and denial of coverage. Shands is not an enrollee and, for the reasons stated, does not have the remedies of an enrollee.

Administrative Review
Humana cites 42 C.F.R. §§ 417.606(a)(2)(i) & (ii) and 417.610(b)(d) to argue that an administrative review process is available to Shands. The cited provisions define actions considered to be organization determinations, and parties to an organization determination, respectively. To support this argument, Humana also cites 42 C.F.R. § 417.614, which provides that any party dissatisfied with an organization determination may request reconsideration; 42 C.F.R. § 417.616, which sets forth the steps for reconsideration; 42 C.F.R. § 417.620, which explains the responsibility and time limits for reconsideration, including the submission of the file to HCFA; and 42 C.F.R. § 417.636, which provides the civil action must be filed in United States District Court. However, these statutes and regulations outline the appeals process enrollees are required to follow. They do not apply to Shands because Shands is not an enrollee. As previously discussed, under §§ 417.610(b)(d) and 417.604, Shands does not fall within the definition of a "party" entitled to appeal an organization determination. In fact, Shands is expressly precluded from the right to appeal under the cited subsections.
Humana also cites 42 U.S.C. § 1395ff(a) & (b) for the proposition that an appeal and administrative review process is available to Shands, beginning with an "initial determination," ending with a "final determination," and providing administrative review of the determinations. However, a review of the cited statutes reveals the determinations relate to whether an individual is entitled to benefits, the amount of an individual's benefits, and the appeals process an individual dissatisfied with his or her entitlement to benefits is required to follow. Again, because Shands is a non-plan provider, not an individual entitled to Medicare benefits, this process is unavailable to Shands.
Also belying the notion that a federal administrative review process is available to Shands is a letter in the record from HCFA to Shands. The letter states that reconciliation of final settlement between Medicare HMOs and non-contracting providers is between the HMO and the provider. The letter goes on to state that HCFA has no standardized process HMOs are required to follow in the reconciliation process. This letter indicates that non-contracting providers must pursue claims against the HMO directly, and that adjudication by administrative process through the federal agency is not available.
Humana has shown neither federal preemption nor that Shands failed to exhaust its administrative remedies. Having considered the foregoing federal statutes, regulations and letters in the record, we find that federal administrative remedies were unavailable to Shands.

The Medicare Act and the Humana-HCFA Contract
Humana argues that Shands' claims fall under the Medicare Act, and that Shands is seeking Medicare benefits. As evidence, Humana offers Shands' admission that the DMEs it is seeking would not be available absent Medicare law. Humana also argues no private contract exists. These arguments are without merit.
Clearly a contract exists between Humana and Shands. The contract has been acknowledged by Humana because, with the exception of requested DMEs, Humana has paid Shands' bill in its entirety. Additionally, Shands is not seeking Medicare benefits. It *346 is seeking payment of a DME, to which an individual Medicare beneficiary presumably is not entitled.
Shands is correct in stating that absent Medicare law, the DME would not be available. Under the terms of the Humana-HCFA contract, Humana, when dealing with health care providers, is required to follow certain federal rules, regulations and general instructions provided by HHS. The contract also requires non-contractual providers be paid pursuant to the terms of the Humana-HCFA contract. The Health Maintenance Organization-Competitive Medical Plan Manual (HCFA HMO Manual), published by HCFA,is one of the general instructions provided by HHS and incorporated by the Humana-HCFA contract. It requires Shands to accept as payment in full the price Medicare would pay, and requires Humana to pay hospital specific add-ons for capital pass-through costs and DMEs.
These are contractual provisions. The fact that, absent federal Medicare law, rules and regulations, these contractual provisions would not exist, does not place Shands' state common law contractual claims under the Medicare Act, and thus, in the federal forum.

Florida Law
Under Florida law, a Medicare-eligible individual who enrolls in a Medicare HMO must be notified that he or she will be disenrolled from Medicare upon enrollment in the HMO. § 641.309(1)(c), Fla. Stat. (1997). Although, as noted by Humana, this provision relates to marketing to persons eligible for Medicare, it serves as notification that the enrollee's legal rights change and that he or she is no longer under federal Medicare law, but under only those federal law provisions which are incorporated into the private contract.
Florida law also provides that when a contract exists between an HMO and a provider, and the HMO fails to meet its obligation to pay for services, the HMO, not the subscriber, is liable to the provider. § 641.315, Fla. Stat. (1997). Although § 614.315(4) requires a contract between an HMO and a provider to be in writing, in this case, contract formation is not an issue, and the cited statutes do not address the DMEs Shands is seeking from Humana.
Thus, under Florida law, an enrollee in a Medicare HMO is no longer under the auspices of federal Medicare law, but is instead under the provisions of a private contract. Federal Medicare law will not apply except as the benefits and procedures under that law are incorporated by contract. Furthermore, under Florida law, and federal law as incorporated by contract, Shands is precluded from pursuing payment from any entity other than Humana. As a result of the foregoing, Shands' claims arise not under the Medicare Act but, instead, under the laws of private contract formation.
Accordingly, the order of the lower court is REVERSED AND REMANDED.
BOOTH and ALLEN, JJ., CONCUR.