778 So.2d 1037 (2001)
Lise GREENE and Gilbert C. Greene, Appellants,
v.
WELL CARE HMO, INC., Appellee.
No. 4D99-503.
District Court of Appeal of Florida, Fourth District.
February 14, 2001.
Rehearing Denied March 30, 2001.
*1038 Gary M. Farmer, Jr. of Gillespie, Goldman, Kronengold & Farmer, P.A., Fort Lauderdale, for appellants.
Nancy W. Gregoire of Bunnell, Woulfe, Kirschbaum, Keller, Cohen & McIntyre, P.A., Fort Lauderdale, and Thomas S. Rutherford of Thomas S. Rutherford and Associates, P.A., Tampa, for appellee.
LENDERMAN, JOHN C., Associate Judge.
This case is before us to determine whether bad faith and common law tort actions can be alleged against a health maintenance organization by an individual. Appellants, Lise and Gilbert Greene, timely appeal from the dismissal with prejudice of Counts III and IV of their Third Amended Complaint filed against appellee, Well Care HMO, Inc. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.030(b)(1)(A).

*1039 Factual Allegations
Well Care HMO, Inc. (Well Care), an accredited health maintenance organization (HMO) licensed to do business in Florida, issued a health maintenance policy to Lise Greene, who had a history of cancer and had undergone radiation and chemotherapy treatment. The treatment created a condition known as radiation-induced hemorrhagic cystitis that, in layman's terms, thins the walls of the veins and arteries and causes bleeding and clotting in the bladder. Once bleeding begins, it causes clotting which makes it impossible to void fluids. She was forced to sit in a bathtub full of warm water and to consume large amounts of warm water in an effort to void the clots. Ultimately, she was unable to void her bladder, leaving her at risk for a ruptured bladder. She then underwent six cauterization procedures to clean out her bladder and enable the bladder to function properly.
Lise Greene suffered from a weakened heart valve from prior radiation treatments. General anesthesia posed a great risk in seeking alternative care. Her primary physician referred her to a participating urologist. The urologist prescribed hyperbaric oxygen treatment for her condition. Her urologist opined that without hyperbaric oxygen treatment, she would continue to suffer constant pain and would ultimately be forced to undergo bladder removal. In addition, without hyperbaric oxygen treatment, she faced the possibility of formalin treatment, i.e., coating the bladder with formaldehyde.
Well Care initially denied coverage. However, Well Care referred Lise to the Chairman of the University of Miami, Department of Urology, for a second opinion. The second urologist concurred with the first urologist's prescription for hyperbaric oxygen treatment. The second urologist also agreed that the formalin treatment was inappropriate and that Lise was at great risk without the hyperbaric oxygen treatment.
Despite the fact that Lise followed Well Care's rules and protocols by obtaining a referral from her primary physician to a urologist and then to a second urologist for a second opinion, Well Care denied coverage for the prescribed treatment in violation of the terms and conditions of the policy.
After Lise filed suit, summary judgment was granted in her favor on the counts in the Third Amended Complaint dealing with specific performance and injunctive relief. Counts III and IV, which sought damages were dismissed with prejudice and are the subject of this appeal. In Count III, she alleged that Well Care's failure to honor her claim for benefits constituted bad faith handling of a claim and unfair trade practice in violation of sections 641.3901-.3095 and 624.155, Florida Statutes (1997). Count IV was a claim for loss of consortium by Lise Greene's spouse. The Greenes also attempted to allege common law claims, but the trial court declined to permit further amendment to the complaint.

Analysis: Statutory Basis for Private Bad Faith Action
Chapter 641 of the Florida Statutes is known as the "Health Maintenance Organization Act." §§ 641.17-641.3922, Fla.Stat. (1997). The Greenes assert that the trial court erred when it found that the Act does not provide for a private cause of action and then dismissed Counts III and IV of the complaint with prejudice on that basis. In particular, they argue that under section 641.28, and the case law, there is an implied intent by the legislature to provide a private cause of action against an HMO for violation of the Act.
In Murthy v. N. Sinha Corp., 644 So.2d 983 (Fla.1994), the supreme court held "that legislative intent, rather than the duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." Id. at 985. It further quotes Moyant v. Beattie, 561 *1040 So.2d 1319, 1320 (Fla. 4th DCA 1990), and states that "[i]n general, a statute that does not purport to establish civil liability, but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability." Murthy, 644 So.2d at 986.
Section 641.28 provides:
Civil remedy.In any civil action brought to enforce the terms and conditions of a health maintenance organization contract, the prevailing party is entitled to recover reasonable attorney's fees and court costs. This section shall not be construed to authorize a civil action against the department, its employees, or the Insurance Commissioner or against the Agency for Health Care Administration, its employees, or the director of the agency.
The Greenes suggest that this language implies the legislature's intent to provide for a private cause of action. The Greenes' argument on this point misconstrues the language of the section. The Greenes argue that a claim based on an HMO's bad faith breach of contract constitutes a "civil action" arising out of an HMO contract. The language of the section, however, is more limited. It refers to any civil action brought to enforce the terms and conditions of an HMO contract. The language clearly refers to the Greenes' Counts I and II, which sought an injunction requiring Well Care to pay for the treatment and for specific performance to continue paying for the treatment under the contract. The Greenes would be entitled to attorney's fees as the prevailing party on those counts, but Counts III and IV did not seek to enforce the terms and conditions of the contract.
The Greenes also rely on section 641.3917, Florida Statutes, which provides:
Civil liability.The provisions of this part are cumulative to rights under the general civil and common law, and no action of the department shall abrogate such rights to damage or other relief in any court.
A private cause of action cannot be inferred from this language alone.
In the complaint, the Greenes allege that there is a private cause of action under sections 641.3901-.3905, Florida Statutes. These sections prohibit an HMO from engaging in any unfair or deceptive act or practice and defines those acts or practices. Section 641.3905, gives the Department of Insurance:
[t]he power to examine and investigate the affairs of every person, entity, or health maintenance organization in order to determine whether the person, entity, or health maintenance organization is operating in accordance with the provisions of this part or has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by s. 641.3901.
Sections 641.3907-.3913 provide for what the Department of Insurance can do when such violations are found, i.e., hold hearings and suspend or revoke certificates of authority. There is no provision for any private cause of action.
The 1996 Florida legislature sent a bill to Governor Chiles which provided for civil liability by an HMO for lack of good faith. Governor Chiles vetoed the bill and provision for such civil liability was never made. The Greenes assert that the legislature's attempt to amend the Act can be read as an attempt to codify what the legislature previously intended. It appears more likely that the language of the Act did not and does not provide for an implied civil action and the legislature was trying to add that liability through the proposed amendment.
The only other statutory cause of action for bad faith pleaded by Greene is under section 624.155, Florida Statute (1997). In 1982, the legislature enacted section 624.155, which provides that any person can bring a civil action against an insurer when the person is damaged by the insurer for not settling claims in good *1041 faith. Thus, a statutory cause of action exists for a first party cause of action for bad faith against an insurer.
Section 641.30(2), Florida Statutes (1997), however, provides that the Florida Insurance Code, which includes section 624.155, does not apply to health maintenance organizations certified under Part I of Chapter 641. Therefore, with respect to Well Care, a statutory first-party bad faith claim is not available.
Based upon the foregoing, the trial court did not err in dismissing Counts III and IV.

Analysis: Leave to Amend to Plead Common Law Claims
At the hearing on Well Care's motion to dismiss the Third Amended Complaint, in addition to dismissing Counts III and IV, the trial court stated that "any further amendments to these claims would be futile, as the court finds that no private right of action exists for violations of Florida Statute 641.3903." The Greenes then filed a Motion for Reconsideration and to Vacate Order and/or for Leave to File Amended Complaint arguing that they had tort-related claims based on an implied obligation of good faith contained in every contract, i.e., tortious breach of contract and intentional infliction of emotional distress. The trial court also suggested at the dismissal hearing that the economic loss rule would preclude any tort action. The trial court denied the Greenes' entire motion.
This court stated the general rule on amendments in Life General Security Insurance Co. v. Horal, 667 So.2d 967, 969 (Fla. 4th DCA 1996), as follows:
... the court's decision to permit or refuse amendment to pleadings should not be disturbed on appeal in the absence of an abuse of discretion. However, leave to amend should not be denied unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile.
(citations omitted).
The first question is whether the privilege to amend has been abused. In this case, which took less than eight months from start to finish, the complaint was amended four times. Each amendment was agreed to by the parties and the court. Well Care cites Noble v. Martin Memorial Hospital Ass'n, 710 So.2d 567 (Fla. 4th DCA 1997), rev. denied, 718 So.2d 169 (Fla.1998), in which the appellant moved to amend to add a claim for injunctive relief which he had never requested during the five years of litigation and after a motion for summary judgment was filed. It also cites Kohn v. City of Miami Beach, 611 So.2d 538 (Fla. 3d DCA 1992), in which the appellant failed to state a cause of action after four attempts. In both, the denial of an amendment was affirmed. In the instant case, the prior amendments were agreed to and the case had not been litigated for a long period of time. Any abuse of the privilege to amend by appellants does not appear to be a sufficient basis for the trial court to deny the motion.
The next question is whether there would be prejudice to Well Care if the amendment were permitted. Neither party seems to argue that this test is at issue. The denial of the motion to amend on this basis would have been an abuse of discretion.
The last test is whether allowing an amendment would have been futile; that is, whether the Greenes could state a cause of action. Well Care argued that an amendment would be futile because the common law actions would be barred by the economic loss rule and the causes of action the Greenes wished to plead are not recognized in Florida. These causes of action would not be barred by the economic loss doctrine, because it is alleged that the breach caused physical injury and pain to Lise Greene. Moransais v. Heathman, 744 So.2d 973, 979 (Fla.1999) (economic loss rule prohibits tort recovery for cases *1042 in which a product has damaged only itself and there is no personal injury).
Before section 624.155 was enacted, first party bad faith claims against an insurer were not recognized. The only relief available on the first party claim was a cause of action for breach of contract, unless the insured could allege an independent tort such as fraud or intentional infliction of emotional distress. See Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263 (Fla. 5th DCA 1987). Opperman traces the history of bad faith actions. These decisions were based in part upon the relationship between the insured and insurer as one of debtor/creditor. On the other hand, Florida common law recognized that where there exists a fiduciary relationship between the parties, such as under the duty to defend under bodily injury liability provisions, and the insurer must exercise good faith in negotiating and effecting a settlement of claims, then a cause of action by the insured for bad faith exists against the insurer, see Baxter v. Royal Indem. Co., 285 So.2d 652 (Fla. 1st DCA 1973). These were called third party bad faith claims.
The distinction between the first party claims and third party claims was based upon obligations between the insured and insurer. In the duty to defend and settle, the insurer is acting on the insured's behalf and for his or her benefit. If the insurer refuses to settle in good faith, it could result in additional liability to its insured, when the insured turned over control of settlement to the insurer. Id. at 656-657. However, where the insurer failed to pay a claim of its own insured, the relationship was one of debtor and creditor, and the insured was free to sue its insurer for breach of contract for failure to pay the claim. Id.; see also Talat Enters. v. Aetna Cas. and Sur., 753 So.2d 1278, 1281 (Fla.2000).
In the instant case, Well Care, which is not an insurer, appears to be in charge of treatment decisions for its members, rather than simply authorizing the payment of the claims or providing indemnity to the patient for claims for which the patient remains financially responsible. While the entire contract is not in the record, it is clear from the portions that are available that Well Care must authorize treatment in advance. It is Well Care's decision, not that of the physician, as to what medical services are medically necessary for a patient. Since Well Care has placed itself in charge of such decisions for the patient, the relationship is certainly more than one of debtor and creditor. Appellants should be given the opportunity to amend the complaint and try to state a cause of action on these common law claims before the court rules that none exists in relation to Well Care.
Affirmed in part and reversed in part.
WARNER, C.J., and TAYLOR, J., concur.