837 So.2d 1133 (2003)
The FLORIDA PHYSICIANS UNION, INC., Appellant,
v.
UNITED HEALTHCARE OF FLORIDA, INC., Appellee.
No. 5D01-2622.
District Court of Appeal of Florida, Fifth District.
February 21, 2003.
*1134 Donald W. Weidner and Matthew D. Weidner of Weidner, Bowden & Weidner, Jacksonville, and Christene M. Miele and Lewis W. Harper of Brennan, Manna & Diamond, PL, Jacksonville, for Appellant.
Edward Soto and Jennifer J. Ator of Weil, Gotshal & Manges, LLP, Miami, for Appellee.
SHARP, W., J.
Florida Physicians Union (Florida Physicians) appeals from a final judgment which granted United Health Care of Florida, Inc.'s (United Health Care) motion for judgment on the pleadings. The issue in this case is whether or not Chapter 641 (known as the Health Maintenance Organization Act) and specifically section 641.3903, et seq., creates a private cause of action to bring a declaratory judgment suit to enforce the statute or to declare its violation. We affirm, finding no such cause of action exists.
This proceeding commenced in 1999 when Florida Physicians filed a lawsuit against United Health Care (a Health Maintenance Organization) seeking a declaration that various payment methods engaged in by United Health Care, violated section 641.3903. Florida Physicians is an organization which represents medical care providers (medical doctors and their associations) who are under contracts with United Health Care to provide medical services for United Health Care's subscribers (or insureds) and receive payment from United Health Care for services rendered to those subscribers. In its pleadings Florida Physicians alleged that United Health Care had implemented a software system which, it claimed, created coding and billing errors. Specifically, it alleged the system automatically converted billing codes to a lower reimbursement rate (downcoding), which resulted in the systematic denial of full reimbursement to the providers. It also alleged United Health Care systematically lost or misplaced claims, rejected claims or delayed payment of them as a general business practice, resulting in lost interest, delayed payment and damages to the providers.
The remedy sought by Florida Physicians in this case is a declaration by the court that the alleged practices by United Health Care violate section 641.3903 and for an award of attorney fees and costs.
The trial court ruled that section 641.3903 did not create a private cause of action for Florida Physicians in this context, relying on Greene v. Well Care HMO, Inc., 778 So.2d 1037 (Fla. 4th DCA 2001). In Greene, the issue before the court was whether an insured and spouse could bring a cause of action against the HMO for bad faith handling of a claim constituting an unfair trade practice in violation of sections 641.3901-95 and 624.155, Florida Statutes (1997). The court held that the *1135 insured and spouse could pursue breach of contract and tort claims based on common law against the HMO, but that the legislature intended no private cause of action for an individual to enforce the statute. We agree with this view.
Chapter 641 primarily seeks to regulate the business of health management organizations in this state, to ensure that they provide at least acceptable quality health care to their insureds (or subscribers as defined by the statute). It requires them to obtain and keep a current certificate of authority to operate, issued by the Department of Insurance; it mandates standards and requirements for their operation and requires them to file reports and submit to examination by the Department of Insurance. Certain kinds of improper business practices are prohibited in sections 641.3901, 641.3903 and 641.3905 and are labeled as "unfair methods of competition and unfair or deceptive acts or practices."
Some business practices described in section 641.3903(5) appear to be encompassed by the kinds of practices described in Florida Physician's allegations. Specifically:
(5) UNFAIR CLAIM SETTLEMENT PRACTICES.
(c) Committing or performing with such frequency as to indicate a general business practice of the following:
1. Failing to adopt and implement standards for the proper investigation of claims;
* * *
3. Failing to acknowledge and act promptly on communications regarding claims;
4. Denying of claims without conducting reasonable investigations based on available information;
5. Failing to affirm or deny coverage... within a reasonable time ... not more than 30 days after claims or proof of last statement has been completed and ... received.
However, most of the provisions in the statute appear to be designed to protect and safeguard the subscribers against business practices of the HMOs. The statute defines providers and they are acknowledged as playing an essential part in the general overall plan of prepaid medical service. But, at least as the statute was originally drafted, they are not focused on as parties needing protection. For example, section 641.315 provides that only the HMO is liable for services rendered, not the subscriber or insured. The providers are prohibited from collecting funds from a subscriber for services provided and covered by the HMO. The statute also requires the provider to give the HMO 60 days notice before cancelling a contract with the HMO. Another provision allows the HMO to terminate a contract with a provider who over charges for services or at the direction of the Department and requires that such termination provisions be included in all contracts with providers. See § 541.234, Fla. Stat.
As revised after 1997, some protections and safeguards were written into the statute to address some of the perhaps more recently realized conflicts between providers and HMOs. See §§ 641.31(18)(f)(3); 641.3155. Relevant to this case, section 641.3903 added as an "unfair claim settlement practice (5)(c)9systematic down coding with the intent to deny reimbursement otherwise due."
However, the general scheme of the statute is to empower the Department of Insurance to enforce the statute's requirements and determine whether the provisions are being complied with or violated. The Department may seek a temporary or permanent injunction against an HMO, if the statute or any regulation is being violated. § 641.281. It also has been given *1136 extensive powers to examine and investigate HMOs or other persons and entities operating in this regulated business. § 641.3905. It may conduct hearings in accord with chapter 120 to determine whether a person has engaged in unfair methods of competition or an unfair or deceptive practice. § 641.3907. If the Department finds a violation of the statute, it can issue cease and desist orders, revoke or suspend an HMO's certificate of authority to operate and invoke administrative penalties. § 641.3909.
Florida Physicians argues that Greene is not determinative of this case because the plaintiff in this case is a provider, not an insured or a subscriber. That difference does not help Florida Physicians' position. As noted above, the statute appears primarily designed to protect and safeguard the subscribers or the insureds. Although providers may also need protection in this business context against HMOs[1] if the subscribers do not have a private cause of action under this statute, then even more clearly providers do not.
Florida Physicians points to two provisions in chapter 641 which refer to lawsuits brought by private parties in support of its argument that a private statutory cause of action is implied.
First, section 641.28. It provides that:
In any civil action to enforce the terms and conditions of a health maintenance organization contract the prevailing party is entitled to recover reasonable attorney fees and costs. This section shall not be construed to authorize a civil action against the Department, its employees or the insurance commissioner or against the Department of Health and Rehabilitation, its employees or the secretary of that Department.
We agree with the court in Greene that civil suits to enforce a contract with an HMO are unaffected by the statute and clearly can be brought in a proper case. This statute merely authorizes prevailing party attorney fees for those lawsuits.[2] Suit on a contract with an HMO is not involved in this appeal. As noted above, Florida Physicians is seeking only a declaratory judgment that United Health Care has and is violating the statute.
Second, section 641.3917. It provides that the provisions of the statute are "cumulative to rights under the general and civil and common law, and no action of the *1137 Department shall abrogate such rights to damages or other relief in any court." In our view, this statute merely clarifies that other causes of action which may exist, are not superceded or cancelled by any provision in chapter 641. See Cycle Dealers Ins., Inc. v. Bankers Ins. Co., 394 So.2d 1123 (Fla. 5th DCA 1981).
Neither provision expressly or impliedly authorizes a private suit brought for purposes of enforcing or declaring violations of the statute. Indeed, if in the context of a declaratory judgment, a circuit court found that statutory violations were ongoing or in existence, its judgment would either be advisory and still require the Department to take action, or it would usurp the jurisdiction of the Department to investigate, find violations of and enforce the provisions of the statute. Conceivably the Department might disagree with a circuit court about the existence of a violation or the method to remedy it. And, there would be no ready appellate mechanism to resolve the dispute.
The courts of this state have long been reluctant to find the legislature intended private parties to have causes of action to enforce statutes like chapter 641, without strong indication that was the legislature's intent.[3] In our view that intent is contraindicated (to use medical jargon) by the context of this statute.
AFFIRMED.
THOMPSON, C.J., concurs.
SAWAYA, J., concurs in result only.
NOTES
[1] The problem complained about in this case, deliberate delaying of and refusal to pay valid claims, and other interference in the payment process of valid claims, is an increasing problem in the managed care industry. See "Managing Managed Care: Providers Fight Back Against HMOS," Ralph W. Barbier and Matthew B. Roberts, South Carolina Lawyer, September/October 2001 (13 Oct SCLAW 22). Hospitals and physicians complain that they are forced to submit the same valid claim numerous times, and that valid claims are denied for no reason or some arbitrary reason. Id. When claims are paid, they are often paid late, even though most provider agreements require payment within 30 to 60 days of the receipt of the claim. Id. At least forty-four states have passed prompt payment statutes which generally impose financial penalties, e.g., interest or fines, if the statute is violated. Id. Some state insurance commissioners have levied stiff fines, including Florida. Id. But this apparently has not solved the problem. Nearly one-third of hospitals in this country have terminated contracts with HMOs, citing poor financial results; for large hospitals, that number increases to 60 percent. Id. When providers terminate HMO contracts, consumers of healthcare are negatively impacted.
[2] We do not specifically address the question of whether this statute authorizes prevailing party attorney fees in the context of a suit by a provider against an HMO on a contract. Section 641.28 authorizes attorney fee awards specifically on a "health maintenance organization contract" and section 641.19(6) defines a "health maintenance contract" as one entered into by a HMO with a subscriber or group of subscribers.
[3] See Murthy v. N. Sinha Corp., 644 So.2d 983 (Fla.1994); Baumstein v. Sunrise Community, Inc., 738 So.2d 420 (Fla. 3d DCA 1999); Mora v. South Broward Hosp. Dist., 710 So.2d 633 (Fla. 4th DCA 1998); Freehauf v. School Bd. of Seminole County, 623 So.2d 761 (Fla. 5th DCA 1993); Moyant v. Beattie, 561 So.2d 1319 (Fla. 4th DCA 1990); Fischer v. Metcalf, 543 So.2d 785 (Fla. 3d DCA 1989).