932 So.2d 214 (2005)
WESTSIDE EKG ASSOCIATES, Appellant/cross-appellee,
v.
FOUNDATION HEALTH; a Florida Health Plan, Inc.; Health Options, Inc.; Hip Health Plan of Florida, Inc. f/k/a PCA Family Health Plan, Inc.; and Health Options Connect, Inc. f/k/a Principal Health Care of Florida, Inc., Appellees,
Humana Medical Plan, Inc. f/k/a PCA Health Plans of Florida, Inc., Appellee/cross-appellant.
Nos. 4D03-3533, 4D03-4837.
District Court of Appeal of Florida, Fourth District.
May 4, 2005.
*215 Philip M. Burlington of Philip M. Burlington, P.A., Jeffrey M. Liggio and Jene Williams-Rhoads of Liggio, Benrubi & Williams, P.A., West Palm Beach, and Edward H. Zebersky of Zebersky & Payne, LLP, Hollywood, for appellant/cross-appellee.
Nancy W. Gregoire, W. Edward McIntyre and Daniel Alter of Bunnell, Woulfe, Kirschbaum, Keller, McIntyre & Gregoire, P.A., Fort Lauderdale, for Appellees-Health Options, Inc. and Health Options Connect, Inc.
Andrew S. Berman of Young, Berman, Karpf & Gonzalez, P.A., North Miami Beach, for Appellee/cross-appellant-Humana Medical Plan, Inc.
Bradley Winston, Plantation, for amicus curiae-AARP.
*216 STONE, J.
Westside EKG Associates (Westside) sued seven health maintenance organizations (HMOs), claiming violations of the Health Maintenance Association Act (Act), chapter 641, Florida Statutes, for the improper processing of providers' claims for medical services rendered to HMO subscribers. Westside claims HMOs failed to comply with the "prompt pay" provisions of the Act, primarily found in section 641.3155. Westside seeks damages for breach of HMO subscriber contracts and a declaratory judgment, based on its charge that HMOs have a practice of failing to pay claims within the time mandated by the Act. HMOs contend that subscribers and providers have no legal remedy other than to pursue administrative relief.
The trial court entered judgment on the pleadings in favor of HMOs, concluding that the supreme court's opinion in Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842 (Fla.2003), has foreclosed all private causes of action arising out of HMO violations of, or failure to comply with, the Act. We reverse.
We do not deem Villazon applicable to an action founded on a theory of breach of contract. In Villazon, a deceased patient/subscriber's estate was seeking to hold a HMO vicariously liable for medical malpractice by its member physicians. The supreme court, in holding the action was not preempted by federal law, also recognized that the Act does not provide a private right of action for damages. Id. at 852. After ruling on the federal preemption claims, the supreme court stated that the Act does not provide for a private right of action for damages for violation of the Act's requirements. The court did, however, acknowledge the plaintiff's underlying right to bring a common law negligence claim based upon the same allegations. Id.
Westside's claims are essentially founded on its assertions that providers are third party beneficiaries of HMO-subscriber contracts and that it is entitled to enforce applicable provisions of the Act by virtue of the common law principle that contracts governed by regulatory statutes are deemed to incorporate relevant portions of such statutes in their terms.
It is an accepted principle of law that when parties contract upon a matter which is the subject of statutory regulation, the parties are presumed to have entered into their agreement with reference to such statute, which becomes a part of the contract, unless the contract discloses a contrary intention. Northbrook Prop. & Cas. Ins. Co. v. R & J Crane Serv., Inc., 765 So.2d 836 (Fla. 4th DCA 2000); Grant v. State Farm Fire and Cas. Co., 638 So.2d 936 (Fla.1994); P.C. Lissenden Co. v. Bd. of Cty. Comm'rs of Palm Beach, 116 So.2d 632 (Fla.1960); Citizens Ins. Co. v. Barnes, 98 Fla. 933, 124 So. 722 (1929).
The Act requires that health maintenance organizations pay or deny a claim no later than 120 days after receipt. § 641.3155(2),(4), Fla. Stat. Failure to do so results in an uncontestable obligation that the health maintenance organization pay the claim to the health care provider. Id. See § 641.3155(4). See also § 641.185(e).
The Act provides that contracts with members be applied as if their terms are in full compliance with the Act. § 641.3105, Fla. Stat. (2000). The Act contains several provisions for the protection of HMO subscribers, covers many requirements concerning HMO contracts, contains certain provisions limiting the enforcement of the contract requirements, and integrates an administrative procedure for resolving disputes.
*217 We recognize that section 641.185(2), after detailing certain subscribers' rights in section 641.185(1), states that the section "shall not be construed as creating a civil cause of action by any subscriber or provider against any health maintenance organization." However, we do not accept HMOs' contention that section 641.185(2) goes beyond the section and requires that subscribers and providers be limited to the Act's administrative remedy provisions for all failures to comply with the Act, and particularly as to its prompt pay provisions. To so hold would require that we disregard other provisions of the Act that recognize or anticipate the existence of parallel legal remedies.
Furthermore, section 641.3154(4) provides:
A provider . . ., regardless of whether the provider is under contract with the health maintenance organization, may not collect or attempt to collect money from, maintain any action at law against or report to any credit agency a subscriber of an organization for payment of services for which the organizations is liable, if the provider in good faith knows or should know that the organization is liable. This prohibition applies during the pendency of any claim for payment made by the provider to the organization for payment of the services and any legal proceedings or dispute resolution process to determine whether the organization is liable for the services if the provider is informed that such proceedings are taking place. It is presumed that the provider does not know and should not know that an organization is liable unless:
(a) the provider is informed by the organization that it accepts liability;
(b) A court of competent jurisdiction determines that the organization is liable;

(c) Or the department or agency makes a final determination that the organization is required to pay for such services subsequent to a recommendation made by the Statewide Provider and Subscriber Assistance Panel pursuant to s. 408.7056.[1]
(Emphasis added; footnote added)
The Act also contains provisions concerning civil remedies, civil liability, the *218 validity of non-complying contracts, and the interpretation of contracts deviating from the statute. See §§ 641.28; 641.3917; 641.3105(1). We note that section 641.28 implicitly recognizes that civil actions are available to enforce the terms and conditions of a health maintenance organization contract. That section provides that in such a suit, the prevailing party is to recover attorney's fees. The section specifically exempts certain affected government administrative offices, agencies, and personnel from its scope, but does not mention HMOs. Thus, its exemptions are not extended to HMOs.
Accordingly, we recognize Westside's right to bring these claims, notwithstanding that the Act does not explicitly authorize private enforcement of its provisions. We do not read Villazon as receding from the well-established common law principle that contracts covering subjects regulated by statute are presumed to incorporate provisions of statutes regulating the subject of such contracts. Applying Villazon to bar breach of contract and declaratory judgment claims would essentially preclude any significant court action against HMOs. Application of Villazon in this manner would restrict unpaid service providers to relief by administrative proceedings to resolve violations of the Act, under sections 408.7056 and 408.7057, while leaving HMOs free to sue to determine by litigation if the HMO is liable for payment. See § 641.3154(4)(b), Fla. Stat. We note that if such was the legislative intent, it would be more clearly spelled out in the Act.[2]
HMOs acknowledge that the Act contemplates non-contract, as well as contract, providers rendering services to subscribers, and that the legislature intended that non-contract providers stand on an equal footing with contract providers in enforcing their right to payment. See § 641.3154(4), Fla. Stat.
Failure to allow providers to enforce the Act's prompt payment provisions, integral to the HMO contracts with subscribers, would render HMOs impervious to legal action, granting them exclusive access to the courts but confining service providers to the administrative process. Such a limitation would also deprive service providers of common law rights to civil remedies, including third party claims. Such a result would be to the detriment of subscribers, the protected class under the Act. See § 641.185, Fla. Stat.
In Foundation Health v. Garcia-Rivera, M.D., 814 So.2d 537 (Fla. 3d DCA 2002), a class action by contract providers for violation of the Act's "prompt pay" provisions, issued prior to Villazon, the Third District recognized that service providers have a right to sue HMOs. The court reasoned that its decision was *219 "meaningfully indistinguishable" from Colonial Penn Insurance Co. v. Magnetic Imaging Systems I, Ltd., 694 So.2d 852 (Fla. 3d DCA 1997), which approved a class action against the insurer for violation of the PIP prompt pay statute. We also note that courts in other states have allowed enforcement of "prompt pay" provisions by allowing private parties to bring suit to enforce statutory provisions. See Wallace v. State Farm Fire & Cas. Co., 247 Ga.App. 95, 539 S.E.2d 509 (2000); St. Clare's Hosp. v. Allstate Ins. Co., 215 A.D.2d 641, 628 N.Y.S.2d 128 (1995); J.C. Penney Life Ins. Co. v. Heinrich, 32 S.W.3d 280 (Tex.App.2000). Federal decisions have also recognized the legitimacy of provider suits against HMOs. In re Humana Inc. Managed Care Litigation, 2000 WL 1925080 (J.P.M.L.2000) (judicial panel on multi-district litigation transferring and consolidating multiple actions from around country).
We have considered Greene v. Well Care HMO, Inc., 778 So.2d 1037 (Fla. 4th DCA 2001), and Florida Physicians Union, Inc. v. United Healthcare of Florida, Inc., 837 So.2d 1133 (Fla. 5th DCA 2003). Both Greene and Florida Physicians Union failed to recognize a private cause of action under the Act. Nevertheless, both decisions agreed that "civil suits to enforce a contract with an HMO are unaffected by the statute and clearly can be brought in a proper case." Fla. Physicians Union, 837 So.2d at 1137.
Both Greene and Florida Physicians Union are distinguishable by the nature of the facts and claims in those cases, and by virtue of each acknowledging the availability of a civil remedy for breach of contract. In Greene, an insured brought action against a HMO for violation of the Act, demanding recovery for bad faith and loss of consortium for refusing to pay for treatment. In affirming a dismissal, we concluded that the civil liability language in section 641.3917, Florida Statutes, does not infer a private cause of action against an HMO for unfair or deceptive practices and bad faith. Greene, 778 So.2d at 1040. These are not the issues here. Additionally, we went on to remand with directions to permit further amendment to plead common law actions against the HMO. Id. at 1041.
In Florida Physicians Union, medical doctors under contract with a HMO sued for violation of section 641.3903 of the Act, charging unfair methods of competition and unfair or deceptive acts or practices. In addition to finding no private right of action to enforce the statute, the court stated that "the general scheme of the statute was to empower the Department of Insurance to enforce the statute's requirements and determine whether the provisions are being complied with or violated, and that the remedy to seek was an injunction." 837 So.2d at 1135. Nevertheless, the court, in Florida Physicians Union, made the limited nature of its decision clear by adding that "[s]uit on a contract with an HMO is not involved in this appeal." Id. at 1136.
Service providers are recognized as third party beneficiaries of insurance contracts in other contexts. In Allstate Insurance Co. v. Kaklamanos, 843 So.2d 885 (Fla.2003), the supreme court recognized that an insured under an automobile liability policy could sue the insurer to recover for non-payment of personal injury protection (PIP) benefits, reasoning that PIP entitlement arises out of the automobile insurance contract and is governed by contract principles. Id. at 892; see also Orion Ins. Co. v. Magnetic Imaging Sys. I, 696 So.2d 475, 478 (Fla. 3d DCA 1997).
Kaklamanos is significant, as the regulatory scheme for the Act is patterned after provisions in the Florida Insurance *220 Code.[3] Section 641.3155 contains provisions similar to those found in the PIP statute section 627.736(4), Florida Statutes. Section 641.3155(2)-(3) imposes deadlines for the HMO to contest or deny claims, to take other action, and obligates the HMO to pay interest on overdue payments. It also recognizes that if the HMO does not pay or deny a claim within 120 days, it has an "uncontestable obligation to pay."[4] We recognize that Kaklamanos does not determine whether the PIP statute allows a private right of action. There, the insured was attempting to enforce statutory provisions by construing the contract in a manner consistent with the statute. 843 So.2d at 896. See also Allison v. Imperial Cas. & Indem. Co., 222 So.2d 254 (Fla. 4th DCA 1969) (statutes become part of the insurance contract); State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 832 (Fla.1993) (the terms of section 627.428attorney's fees civil liabilityare an implicit part of every insurance policy).
In another context, in Jim Macon Building Contractors, Inc. v. Lake County, 763 So.2d 1223 (Fla. 5th DCA 2000), the court noted that there are three parties to a letter of credit: an issuer, an account holder, and a beneficiary who is entitled to collect monies. The court recognized that, although a letter of credit is often referred to as a contract between the issuer and the account holder, it is more accurate to say that the relationship imposes certain duties between the parties that are enforceable by the third party beneficiary. Similarly, in the HMO paradigm, there are three parties by contract or statute: the HMOs, the subscriber, and the service provider. The providers become the third party beneficiaries of the subscriber-HMO contract once services are provided. Thus, similar to the letter of credit analysis in Jim Macon, the service providers are entitled to collect the monies as a third party beneficiary of the contract.
We conclude that service providers, claiming as third party beneficiaries under a subscriber's contract, may bring an action founded on the HMOs' failure to comply with the prompt pay provisions of the Act. We remand for further proceedings on the common law contract and declaratory judgment claims. Humana's cross-appeal is moot.
Recognizing the potential impact of this decision on the industry, we certify the following question to the supreme court as one of great public importance:
ARE THE PROMPT PAY PROVISIONS OF THE HEALTH MAINTENANCE ORGANIZATION ACT ENFORCEABLE BY COURTS IN AN ACTION FOUNDED ON PRINCIPLES OF BREACH OF CONTRACT BROUGHT AGAINST A HMO BY A SERVICE PROVIDER?
FARMER, C.J., and TAYLOR, J., concur.
NOTES
[1] When a HMO is liable for payment to a service provider based on an uncontestable claim under 641.3155(c), an administrative procedure is established under section 408.7056, Florida Statutes, of the Health Care Administration Act. The procedure requires that the service provider: submits the grievance for review by a panel; the panel recommends to the agency or the department any actions that should be taken; if the agency determines that the grievance should be heard, it notifies the panel and parties; after a hearing, the panel must issue a written recommendation supported by findings of fact; the party adversely affected by the panel's recommendation may furnish the agency or department written evidence in opposition; the agency or department may adopt the recommendation and issue an order which may include fines or sanctions under the Act, sections 641.25 and 641.52; or, the agency may reject all or part of the panel's recommendation. Under section 408.7057(12), every HMO shall submit a quarterly report to the agency and the department listing the number and nature of all grievances which have not been resolved to the satisfaction of the subscriber or the provider after they have followed the entire internal grievance procedure of the managed care entity. The Act also imposes 10% yearly interest for overdue payment of a claim to the service provider. Section 408.7057 covers claims dispute resolution between service providers and managed care organizations. Section 408.7057(2)(a) provides for dispute resolution by an entity selected and contracted by the Agency for Health Care Administration. The section also requires that the Agency for Health Care Administration establish a program to provide assistance to contracted and non-contracted providers and health plans for resolution of claim disputes that are not resolved by the provider and the health plan. Apparently, such a program has not been established.
[2] We do not address any constitutional right of access to courts in this regard, as this issue was not raised in the briefs. See Kluger v. White, 281 So.2d 1 (Fla.1973). The right of access to the courts is guaranteed by Article I, section 21, Florida Constitution. Before the legislature may restrict access to the courts, it must first provide a reasonable alternative remedy or commensurate benefit or it must make a showing of an overpowering public necessity justifying a restriction with a finding that there is no alternative method of meeting such public necessity. Restrictions on the right to access to the courts should be construed so as to favor the constitutional right. Hicks v. Hicks, 715 So.2d 304 (Fla. 5th DCA 1998). A particular statute should be interpreted liberally so as not to unduly restrict access. Kukral v. Mekras, 679 So.2d 278 (Fla.1996)(medical malpractice statute). A person's guaranteed access to the courts should not be unduly or unreasonably burdened or restricted. Preferred Med. Plan, Inc. v. Ramos, 742 So.2d 322 (Fla. 3d DCA 1999).
[3] See and compare: §§ 641.3155; 627.613; 627.614; 641.3104; 627.060; 641.31; 641.3101; 641.3106; 641.3917; 641.3107, Fla. Stat. (2005).
[4] We note that the statute was amended in 2002 to provide different deadlines.