SHARP, W., J.,
dissenting.
Although this case is an aged one for this court, I find it necessary, after reviewing the record, to dissent and write an opinion. This is not a case which should be dismissed for lack of jurisdiction, and on the merits it should be reversed.
Jurisdiction.
John and Kimberly Martini (the Martinis) filed a complaint on December 18, 2001 and an amended complaint on February 5, 2002, after the home they purchased from Daniel and Sally Young (the Youngs) contained serious latent defects which could not be repaired and which rendered the home uninhabitable.[1] In addition to the Youngs, Tortoise Island Realty, Inc., (Tortoise Island),[2] Toni L. Pastermack, P.A. (Pastermack)[3] and Union Planters PMAC (Union Planters),[4] were also sued.
The amended complaint alleged four causes of action: recision of contract, breach of contract, misrepresentation, and fraud. On March 18, 2002, Union Planters *650 filed a motion to dismiss, which was followed by motions to dismiss from Tortoise Island April 11, 2002; Pastermack April 29, 2002, and the Youngs July 24, 2002.
On September 24, 2002, the court entered an agreed order granting Paster-mack’s motion to dismiss count I, and gave the Martinis 10 days to amend. On October 4, 2002, the court entered two agreed orders granting the Youngs motions to dismiss, and gave the Martinis ten days to amend. Finally, on December 12, 2002, the court entered an order which dismissed the amended complaint without prejudice and gave the Martinis 20 days to amend. The Martinis’ attorney failed to amend on any of these occasions.
After the twenty-day period to file a second amended complaint lapsed, the Youngs and Union Planters filed an amended motion to dismiss and Paster-mack filed a motion to dismiss with prejudice. A hearing on these motions was held on February 4, 2003, which resulted in an order entered February 14, 2003.
The February 14, 2003 order was prepared by counsel for the Youngs, Smith, at the direction of the trial court, and the order was based upon the trial court’s oral pronouncement at the February 4, 2003 hearing. Smith did not circulate the proposed order to counsel for the other parties due to time constraints placed upon him by the trial judge. The judge executed the order and thereafter, counsel for Pastermack requested that minor changes be made in that order. Smith agreed, made the changes, titled the second proposed order “final,” and submitted it to the trial court. On February 21, 2003, the court executed the second proposed “final” order which dismissed all causes of action in the amended complaint with prejudice, and held that the foreclosure action was not dismissed.
The February 21, 2003 order was a proper final order pursuant to Florida Rule of Civ. Proc. 1.540(a), which authorizes a court to correct errors “arising from oversight or omission ... at any time on its own initiative.” The “Authors Comment — 1967,” notes that this subsection “includes only errors or mistakes arising from accidental slip or omission” and that it does not include errors or mistakes “in substance of what is decided in the judgment or order.” See also Bortz v. Bortz, 675 So.2d 622 (Fla. 1st DCA 1996)(Rule 1.540(a) not designed to permit substantive changes in final orders).
Rule 1.540(a) is specifically directed at the type of clerical corrections made by the trial court here, as a result of Smith’s failure to circulate the order. See, e.g., Town of Hialeah Gardens v. Hendry, 376 So.2d 1162 (Fla.1979)(trial counsel’s failure to mail correct copy of appealable order constituted clerical mistake within Rule 1.540(a)); Ashley v. State, 845 So.2d 1008, 1009 n. 1 (Fla. 5th DCA 2003); Gordon v. Green, 382 So.2d 1344 (Fla. 5th DCA 1980); Smith v. Garst, 289 So.2d 774 (Fla. 2d DCA 1974).
The February 21, 2003 “final” order was thus a final order authorized by rule 1.540(a). See Pennington III v. Waldheim, M.D., 695 So.2d 1269, 1271 (Fla. 5th DCA 1997); Howard v. McAuley, 436 So.2d 392 (Fla. 2d DCA 1983). Florida Rule of Appellate Procedure 9.130(a)(5) authorizes review of “specified final orders,” which are “filed under Florida Rule of Civil Procedure 1.540.” See also Williams v. Roundtree, 464 So.2d 1293 (Fla. 1st DCA 1985); Woldarsky v. Woldarsky, 243 So.2d 629 (Fla. 1st DCA 1971)(trial court has authority to re-date earlier final judgment on which time to appeal had expired, pursuant to Rule 1.540(b)).
After the February 21, 2003 final order was filed, Pastermack brought a timely *651 motion to amend it pursuant to Florida Rule of Civil Procedure 1.530(g). Consequently, on May 12, 2003, the court entered an amended order which stated that “after considering the argument of counsel made by all parties to the case, the Court finds that its orders entered on February 14, 2003 and February 21, 2003 may possibly have caused unnecessary confusion of the records ... and should be set aside.” The order then specifically states:
The prior orders in this case dated February H, 2003, and February 21, 2003, are hereby vacated and set aside, and this order shall supersede both of the said orders in their entirety, (emphasis added)
The majority opinion discusses a finality problem, ie., which of the orders, February 14, 2003 or February 21, 2003, is final. It also determines that the order of February 14, 2003 is a final order and that the appeal is therefore untimely. As noted above, if the February 14, 2003 order is a final order, Rule 1.540(a), which applies to final orders, gave the trial judge the jurisdiction to correct mistakes in the February 14, 2003 order, and enter the resulting order of February 21, 2003.
On the other hand, if the February 14, 2003 order was not final, the trial court had the inherent authority to enter a final order on February 21, 2003. See Johnson v. Johnson, 91 Fla. 275, 107 So. 342, 343 (1926); Mills v. Martinez, 909 So.2d 340, 342 (Fla. 5th DCA 2005)(it has been long established that a trial court judge has the right and authority at any time before entering a final judgment to change its rulings). At this point, the question of which.February order is the final order is moot; because neither of these orders were ever appealed,[5] and the court vacated [6] both of them and substituted in their place the amended order on motion to dismiss dated May 12, 2003. It is the May 12, 2003 order from which the Martinis have filed their appeal. The Notice of Appeal as to this order was filed below on May 29, 2003, within the 30 day period for filing an appeal, and thus is timely.[7]
Furthermore, even had the jurisdiction in this case been questionable, any restriction on the right of access to the courts provided to Florida citizens under the Florida Constitution, article I, section 21, should be construed in a way to favor the right of access. See Westside EKG Assoc. v. Foundation Health, 30 Florida Law Weekly D1123, — So.2d —, 2005 WL 1026183 (Fla. 4th DCA May 4, 2005); Hicks v. Hicks, 715 So.2d 304 (Fla. 5th DCA 1998); G.B.B. Investments, Inc. v. Hinterkopf, 343 So.2d 899 (Fla. 3d DCA 1977); Lehmann v. Cloniger, 294 So.2d 344 (Fla. 1st DCA 1974)(statutes and rules should be liberally construed to favor right of access to the courts under Florida Constitution).
Merits.
The record in this case discloses that the genesis for this dispute arose on December 19, 2001, when the Martinis purchased a home from the Youngs, which is located at 617 Tortoise Way, Satellite Beach, Florida, for a purchase price of $261,000. The listing broker was Pastermack. The mortgage holder was Ivanhoe Financial Ser *652 vices, which assigned the mortgage to Union Planters. Union Planters continues to hold the first mortgage on the home, and the mortgage balance is in the neighborhood of $235,000. Prior to purchasing the home, the Martinis engaged a home inspector to inspect the premises. No defects were discovered, save for a spa which was not operational.
The Martinis alleged that almost immediately after closing on the home, they discovered serious latent defects in the property. There was a leaking roof and residual water, with evidence of defective repairs. The residual water in the walls produced toxic mold and caused health problems for Mrs. Martini and her children. The rear of the home around the swimming pool appeared to have sunk and was structurally unsound. The swimming pool cracked in numerous places and had other defects.
The Martinis retained the services of a structural engineer, who determined that the home could not be repaired at a reasonable cost and that the defects were too numerous and extensive to correct. Due to the health problems the family experienced, they were forced to move out of the home and incur dual living expenses. The home also went into foreclosure.
The Martinis hired an attorney, Albert Lagano, who filed suit against the appel-lees. However, the case did not move forward, at least in part because of Laga-no’s failure to file the amended counts and complaint as previously set forth.
At the February 4, 2003 hearing, Laga-no appeared by telephone and represented to the court that he had been dismissed and that the Martinis intended to engage new counsel. He also said that the Martinis had picked up their file “about two— even longer than that — probably three months ago,” and that he thought new counsel had been retained. He told the judge “[a]t this point in time, I think they [defendants] are entitled to dismissal because we haven’t amended.” The only conclusion one may draw from the transcript of this hearing is that the Martinis were, de facto, unrepresented at the hearing, despite the trial court’s finding that Lagano appeared on their behalf.
During the course of the hearing, the court discussed the six factors set out in Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993), which may justify a dismissal of a cause of action for failure to prosecute the case. The court said it could go through the six factors “quickly” and found that the first two factors dealing with an attorney’s disobedience was not relevant because of Lagano’s representation that the Martinis had picked up their file and had discharged him. The judge also opined:
I understand Mr. Lagano has not technically been relieved, but on the other hand, I find that it’s the client being personally involved in the act of disobedience rather than the act of the attorney that last precipitated this problem. I think the delay is indeed prejudicial because of the lengthy period of time that has transpired which is now approaching six months.[8]
I find that there is no reasonable justification for noncompliance when it’s a simple amendment of a complaint, and there have been significant problems in judicial administration created because this case was filed back in [2001]. (emphasis added)
Lagano did advise the court that in the previous two years there had been an intervening factor, the foreclosure action, *653 which was brought as a separate cause of action and which was turned over to the judge presiding at the hearing. He also noted there would have been two amendments of the complaint within the two-year time period.
The judge expressed his belief that the Martinis were the ones who caused the problem by relieving Lagano of “the obligation” (presumably to respond and attend the hearing) regarding the motion to dismiss, and by advising him they were going to retain new counsel. The judge thought they had to suffer the consequences of that behavior.
Dismissal of an action with prejudice is the ultimate sanction in the civil justice system, and it is reserved for only the most aggravating circumstances. Rohlwing v. Myakka River Real Properties, Inc. 884 So.2d 402 (Fla. 2d DCA 2004)(district court reversed dismissal with prejudice where basis of dismissal was the duration of lawsuit and the length of complaint). It is a drastic remedy which courts should employ only in extreme situations. Clay v. City of Margate, 546 So.2d 434 (Fla. 4th DCA 1989).
In 1993, the supreme court set out guidelines for our courts regarding the appropriateness of dismissal. Kozel. The supreme court explained that dismissal must be reserved for the most aggravating of circumstances, and where a lesser sanction would fail to achieve the just result. Kozel. The Kozel court, in setting out the six guiding factors,[9] directed that if, upon consideration of these factors, a less severe sanction than dismissal with prejudice appears to be a viable alternative, the court should employ such alternative. Sanctions other than dismissal that are appropriate include; the imposition of fines, award of attorneys fees, finding counsel in contempt, or referring the matter to the Florida Bar. Kozel; American Express Co. v. Hickey, 869 So.2d 694 (Fla. 5th DCA 2004).
It is essential that attorneys adhere to filing deadlines and other procedural requirements in the interest of an efficient judicial system and in the interest of their clients. Kozel. Although the trial court has the discretionary power to dismiss a complaint if a party fails to timely file an amendment or fails to meet some other filing deadline, that power must be used cautiously because dismissal of a case based solely on an attorney’s neglect unduly punishes the litigant. American Express.
A party should not be made to suffer the loss of viable claims due to the malfeasance of an attorney when there is no evidence in the record to indicate that the party personally engaged in misconduct. See Jimenez v. Simon, 879 So.2d 13 (Fla. 2d DCA 2004)(reversal of dismissal for discovery violations); American Express (reversal of dismissal with prejudice too severe a sanction for attorney missing a series of deadlines and failing to appear at scheduled hearing); Russell v. A.G. Edwards & Sons, Inc., 779 So.2d 452 (Fla. 2d DCA 2000). See also Williams v. Udell, 690 So.2d 732 (Fla. 4th DCA 1997)(miscon-duct did not justify striking party’s pleadings as sanction for failing to respond to *654 request for production or attend mediation conference).
In this case, the record does not establish that the Martinis engaged in any misconduct, much less misconduct so egregious that it would rise to the level which would warrant a dismissal of their claims. All the record shows is that they picked up their file to obtain new counsel.
Further, there is no record evidence to support the conclusions made by the trial judge as to the time when the Martinis picked up their file. Lagano said it was as much as three months before the hearing, but he had not been sworn when he made these self-serving statements. Similarly, there was no actual evidence which indicated the Martinis had received notice of the hearing. Rather, the court surmised they had notice because they had picked up their file and he assumed the notice of hearing was contained in the file. Lastly, the six-month delay, cited by the trial court at a hearing on April 26, 2003, when new counsel appeared and asked for reconsideration, was primarily attributable to Lagano and the court itself.[10]
Moreover, the trial judge did not even consider the first or second Kozel factors, which deal? with the malfeasance of the attorney, Lagano. Instead, he found that the first two factors “dealing with the attorneys ... disobedience, not being relevant” because Lagano represented to the court that his clients picked up their file three months before the hearing, and he understood that he had been discharged. The judge opined “the client takes the case as the client finds it.”
However, in their brief, the Martinis allege that the earliest they informed La-gano of their desire to obtain new counsel was the first week of December, 2002, and that they did not actually receive their file until after the February 4, 2003 hearing. New counsel was engaged on February 10, 2003. Additionally, it is the responsibility of counsel to withdraw from a case when he is discharged. Rules of Professional Conduct, 4-1.16(a)(3). Lagano could have also moved for a continuance in this case until the Martinis had obtained new counsel. See generally, Campbell Soup Co. v. Roberts, 676 So.2d 435 (Fla. 2d DCA 1995).
In any event, even if Lagano’s statements prove to be true, the Martinis’ conduct in obtaining a new lawyer, as cited by the trial judge, is not sufficient to justify the dismissal of their cause of action. See Kozel; American Express.
A dismissal with prejudice is reviewed on an abuse of discretion standard. Rohlwing. I believe that the trial judge abused his discretion in this case by dismissing the Martinis’ cause of action, and I would therefore reverse the order and remand to the lower court.

. There is a duty on the part of a vendor to disclose latent defects. Johnson v. Davis, 480 So.2d 625 (Fla.1985).

. Tortoise Island was the broker who represented the Martinis.

. Pastermack was the listing broker representing the Youngs.

. Union Planters is the mortgage holder.

. The notice of appeal cites the May 12, 2003 order and has attached to it a copy of that order.

. The term "vacate" is defined as: "1. To nullify or cancel; make void; invalidate," Cf. overrule. Blacks Law Dictionary (8th ed.2004). A trial court has the authority to vacate an order pursuant to Florida Rule of Civil Procedure 1.530 or 1.540. Shelby Mutual Ins. Co. v. Pearson, 236 So.2d 1, 3 (Fla.1970).

.See Fla. R.App. P. 9.110(b).

. The time between the February 4, 2003 hearing and the May 12, 2003 order was due to the confusion generated by the court’s earlier two orders.

. The six Kozel factors are: (1) whether the attorney’s disobedience was willful, deliberate, or contumacious, rather than an act or neglect or inexperience; (2) whether the attorney has previously been sanctioned; (3) whether the client was personally involved in the act of disobedience; (4) whether the delay prejudiced the opposing party through undue expense, loss of evidence or in some other fashion; (5) whether the attorney offered a reasonable justification for the noncompliance; and (6) whether the delay created significant problems of judicial administration.

. That is, with regard to the three orders the court rendered on the motion to dismiss, and which took place over a period of three months and 11 days.