MONACO, C.J.
 

 One of the appellees, Florida Health Care Plan (“Florida Health Care”), a health maintenance organization, pre-au-thorized surgical procedures for each of its subscribers, the remaining appellees, through Florida Hospital Fish Memorial in Orange City (“Florida Hospital”). The appellant, Joseph L. Riley Anesthesia Associates, P.A., d/b/a JLR Medical Group (“JLR”), provided anesthesia services to the subscribers/patients in conjunction with their surgical procedures. JLR, however, did not have a contractual agreement with Florida Health Care regarding the amounts to be paid for the medical services it provided to subscribers of Florida Health Care. The issue presented to us for determination is whether a hospital-based, but non-contracted, provider of health care services to the subscribers of a health maintenance organization plan may balance bill the subscribers for the unpaid portion of its statements for medical services that have not been paid by the health maintenance organization. We agree with the trial court that in light of section 641.3154, Florida Statutes (2007), the pro
 
 *142
 
 vider may not balance bill the subscriber, and affirm.
 

 The plaintiffs/appellees are a group of 52 medical patients who are subscribers to Florida Health Care.
 
 [1]
 
 All 52 had surgical procedures at Florida Hospital. The hospital and all of the surgeons involved had contractual arrangements with Florida Health Care regarding insurance payment for their services. Moreover, the contract between Florida Health Care and Florida Hospital provided that the hospital was empowered to direct hospital-based physicians to provide medical services that were pre-authorized by Florida Health Care.
 

 JLR had an exclusive contract with Florida Hospital to provide anesthesia services for surgeries performed there, but had virtually no contact with any of the subscribers prior to the surgeries. What complicated the relationship between the parties further was that although JLR provided anesthesia services to each of the subscribers, it had not contracted with Florida Health Care regarding reimbursement for services.
 

 After each surgery JLR submitted a statement for its medical services to Florida Health Care, but in each instance Florida Health Care paid a reduced amount in full payment of the bill. JLR received and retained each payment, but denied that the payments fully satisfied its statements, and then sent bills to the subscribers for the balance not paid by Florida Health Care. JLR refers to this as “balance billing.”
 

 The patients brought suit seeking a declaratory judgment that JLR’s balance billing violated section 641.3154, Florida Statutes (2007), and that balance billing violated Florida’s Unfair Trade and Deceptive Practices Act under Chapter 501, Florida Statutes. The trial court bifurcated the proceedings and set the declaratory judgment action for trial. At the conclusion of the trial the court held that although JLR did not have a contract with Florida Health Care, it did have a contract with Florida Hospital and with the various surgeons who provided health care services to the 52 subscriber/patients. The final judgment noted that each pre-sched-uled surgery performed at Florida Hospital went through an authorization process during which Florida Health Care would decide if each subscriber/patient was eligible, and whether the requested surgery was a covered benefit. Once approved, an authorization number was issued for use by all involved providers in order for them to submit bills to Florida Health Care for payment. The trial court noted that JLR billed Florida Health Care using the assigned authorization number for each subscriber, and that because Florida Hospital had a contract with Florida Health Care, it was empowered to authorize or direct the provision of JLR’s anesthesia services to Florida Health Care members pursuant to section 641.3156(1).
 

 When the trial court reviewed section 641.3156(1), it found that under that statute a health maintenance organization was liable for services to a subscriber/patient by a provider, regardless of whether a contract existed between the health maintenance organization and the provider. It concluded further that in those circumstances the health maintenance organization would be liable for payment to the provider, but a subscriber/patient would not. Thus, JLR was prohibited from balance billing the appellees.
 

 A trial court’s rulings on its interpretation of statutes and contracts are, of course, reviewed
 
 de novo. See Health Options, Inc. v. Palmetto Pathology
 
 
 *143
 

 Servs., P.A.,
 
 983 So.2d 608 (Fla. 3d DCA),
 
 review denied,
 
 994 So.2d 1104 (Fla.2008);
 
 Lukacs v. Luton,
 
 982 So.2d 1217 (Fla. 1st DCA 2008);
 
 see also Jones v. Utica Mut. Ins. Co.,
 
 463 So.2d 1153, 1157 (Fla.1985);
 
 Contreras v. U.S. Sec. Ins. Co.,
 
 927 So.2d 16, 20 (Fla. 4th DCA 2006),
 
 review denied,
 
 954 So.2d 28 (Fla.2007). We agree with the trial court that pursuant to Florida’s “Health Maintenance Organization Act,” section 641.17-3923, Florida Statutes (2007), a health maintenance organization is liable for services rendered to a subscriber/patient by a provider, regardless of whether a contract exists between the HMO and the provider. The statute is quite specific in providing that a health maintenance organization is liable for payment of fees to the provider, and that a subscriber is not liable for payment of fees to the provider.
 
 See
 
 § 641.3154, Fla. Stat.
 

 More specifically, section 641.3154(4) reads as follows:
 

 A provider or any representative of a provider, regardless of whether the provider is under contract with the health maintenance organization, may not collect or attempt to collect money from, maintain any action of law against, or report to a credit agency a subscriber of an organization for payment of services for which the organization is liable, if the provider in good faith knows or should know that the organization is liable. This prohibition applies during the pendency of any claim made by the provider to the organization for payment of the services and any legal proceedings or dispute resolution process to determine whether the organization is liable for the services if the provider is informed that such proceedings are taking place. It is presumed that a provider does not know and should not know that an organization is liable unless:
 

 (a) the provider is informed by the organization that it accepts liability;
 

 (b) a court of competent jurisdiction determines that the organization is hable;
 

 (c) the office or agency makes a final determination that the organization is required to pay for such services subsequent to a recommendation made by the Subscriber Assistance Panel pursuant to s. 408.7056; or
 

 (d) the agency issues a final order that the organization is required to pay for such services subsequent to a recommendation made by a resolution organization pursuant to s. 408.7057. (Emphasis supplied).
 

 The highlighted first sentence of this subparagraph seems to us to be disposi-tive. The Legislature specifically informs us through this statute that a provider, even one not under contract to the health maintenance organization, may not balance bill a subscriber to the health maintenance organization. As counsel for Florida Health Care agreed during the oral arguments associated with this case, while JLR retains all of its common law remedies against Florida Health Care, it may not collect or attempt collection against the patient if the provider knows that the health maintenance organization is liable.
 
 [2]
 

 In the present case there is little doubt that JLR knew that Florida Health Care was liable. Florida Hospital and the surgeons were pre-authorized by Florida Health Care for each surgery; Florida Health Care issued an authorization number; JLR submitted its bill for each patient/subscriber to Florida Health Care us
 
 *144
 
 ing the appropriate authorization number; Florida Health Care paid some part of the bill directly to JLR; and JLR retained the payments. Thus, JLR was forbidden by section 641.3154(4) to balance bill the patient/subscribers.
 

 JLR argues, however, that the second sentence of section 641.3154(4) modifies the first, so that the prohibition against balance billing only applies “during the pendency of any claim made by the provider to the organization for payment of the services and any legal proceedings or dispute resolution process” resulting from the claim. We read the paragraph differently. The second sentence, we believe, simply assures that the provider will not balance bill during the time when there may be attempts to resolve the issue of whether a health maintenance organization is liable. The second sentence is not a limitation on the first. Rather, it is a stand-still provision. It holds everyone in place while any dispute over liability is pending.
 

 Our reading of the statute is bolstered by a number of factors. First, we see no ambiguity in the statute. JLR’s reading of it is strained, at best. Had the Legislature intended it “only” to apply during the pendency of legal or dispute resolution proceedings, it would surely have begun this critical sentence by saying, “This prohibition
 
 only
 
 applies during the pendency of any claim.... ” Accordingly the plain reading of the statute convinces us of this interpretation.
 

 Second, we have previously held with respect to section 641.315, a precursor to section 641,3154, that the statute
 

 provides that only the HMO is liable for services rendered, not the subscriber or insured. The providers are prohibited from collecting funds from a subscriber for services provided and covered by the HMO.
 

 The Fla. Physicians Union, Inc. v. United Healthcare of Fla., Inc.,
 
 837 So.2d 1133, 1135 (Fla. 5th DCA 2003);
 
 see also Shands Teaching Hosp. & Clinics, Inc. v. Humana Med. Plan, Inc.,
 
 727 So.2d 341, 346 (Fla. 1st DCA 1999). In the same case we also commented that section 641.315, Florida Statutes (1997), was designed to protect and safeguard subscribers, and that while providers are viewed as essential to the overall plan of prepaid medical service, “they are not focused on as parties needing protection.”
 
 Fla. Physicians Union, Inc.,
 
 837 So.2d at 1135. Nothing has been brought to our attention that would suggest that the Legislature intended to modify our statutory reading of the earlier statute by its amendment.
 

 Third, our sister court in the Third District has arrived at the same conclusion in a somewhat similar case where the type of services, rather than the reasonableness of the amount of payment, was in dispute. There, a pathology group associated with a hospital brought a claim against the health maintenance organization for declaratory and other relief in an effort to recover additional payments for the disputed services. The court noted during the course of its opinion that:
 

 As a “non-participating provider” of these services, [pathology group] was nonetheless prohibited (by section 641.3154(4), Florida Statutes (2007)) from directly billing [health maintenance organization] members if [pathology group] knew or should have known that [the organization] was liable for payment. As to the disputed services, therefore, [pathology group] was not being paid by the hospitals, could not collect from [health maintenance organization] members, and was not being reimbursed by [health maintenance organization].
 

 
 *145
 

 See Health Options, Inc. v. Palmetto Pathology Servs., P.A.,
 
 983 So.2d 608, 612 (Fla. 3d DCA),
 
 review denied,
 
 994 So.2d 1104 (Fla.2008).
 

 JLR contends, however, that because it did not specifically seek or obtain Florida Health Care’s authorization prior to performing its medical services, its rights are governed not by section 641.3154(4), but by section 641.3156(1). That statute provides:
 

 (1) A health maintenance organization must pay any hospital-service or referral-service claim for treatment for an eligible subscriber which was authorized by a provider empowered by contract with the health maintenance organization to authorize or direct the patient’s utilization of health care services and which was also authorized in accordance with the health maintenance organization’s current and communicated procedures, unless the provider provided information to the health maintenance organization with the willful intention to misinform the health maintenance organization.
 

 JLR argues that it was either Florida Hospital or the surgeon of each sub-seriber/patient that was empowered by virtue of its contract with Florida Health Care to render services. Thus, according to JLR, because it did not follow the authorization procedures articulated by Florida Health Care, JLR was not in a contract position with the health maintenance organization, and section 641.3156 required Florida Health Care to pay whatever bill JLR sent them without diminishment. It would follow using this logic that if Florida Health Care did not pay the full amount of the bill, JLR could balance bill the remaining unpaid amount. The expansiveness of this argument is breathtaking, and we, of course, reject it.
 

 As the
 
 Health Options
 
 court properly observed, and as the trial court here concluded, hospital-based providers like JLR are deemed authorized by virtue of their exclusive contract to provide anesthesia services at Florida Hospital, and thus fall within the hospital’s authorization for services. There is no question but that anesthesia services were medically necessary for the surgeries, as they were requested by the surgeons, and the contract between Florida Health Care and Florida Hospital recognized this relationship. The authorizations issued to Florida Hospital for services to the Florida Health Care subscribers extended to the services rendered by JLR.
 

 We conclude, accordingly, that any dispute over payment amounts for bills rendered by JLR for the services it rendered to the subscribers of Florida Health Care must remain a dispute between JLR and Florida Health Care. JLR is statutorily prohibited from balance billing the appel-lee/subscribers. While JLR makes other arguments in support of its position, we find none to be meritorious. We, therefore, affirm the final judgment rendered by the trial court.
 

 AFFIRMED.
 

 TORPY, J., and LAMBERT, B., Associate Judge, concur.
 

 [1]
 

 . The trial court consolidated the 52 cases brought by the subscriber appellees.
 

 [2]
 

 . This subsection would not, of course, prohibit collection by the provider of co-payments, co-insurance or deductible amounts due the provider.
 
 See
 
 § 641.3155(8), Fla. Stat.