944 So.2d 188 (2006)
FOUNDATION HEALTH, et al., Petitioners,
v.
WESTSIDE EKG ASSOCIATES, Respondent.
Health Options, Inc., et al., Petitioners,
v.
Westside EKG Associates, Respondent.
Humana Medical Plan, Inc., etc., Petitioner,
v.
Westside EKG Associates, Respondent.
Nos. SC05-870, SC05-871, SC05-872.
Supreme Court of Florida.
October 19, 2006.
*190 Craig J. Trigoboff and Glenn Jerrold Waldman of Waldman, Feluren, Hildebrant and Trigoboff, P.A., Weston, FL, for Petitioners Foundation Health, A Florida Health Plan, Inc., and Vista Health Plan, Inc. f/k/a HIP Health Plan of Florida, Inc.
Nancy W. Gregoire, W. Edward McIntyre, and Daniel Alter of Bunnell, Woulfe, Kirschbaum, Keller, McIntyre and Gregoire, P.A., Fort Lauderdale, FL, for Petitioners Health Options, Inc. and Health Options Connect, Inc. f/k/a Principal Health Care of Florida, Inc.
Andrew S. Berman of Young, Berman, Karpf and Gonzalez, P.A., North Miami Beach, FL, for Petitioner Humana Medical Plan, Inc.
Philip M. Burlington of Burlington and Rockenbach, P.A., West Palm Beach, FL, Jeffrey M. Liggio and Jene P. Williams of Liggio, Benrubi and Williams, P.A., West Palm Beach, FL, and Edward H. Zebersky of Zebersky and Payne, LLP, Hollywood, FL, for Respondents Westside EKG Associates.
Dorothy F. Easley and Steven M. Ziegler of Steven M. Ziegler, P.A., Hollywood, FL, on behalf of America's Health Insurance Plans; George N. Meros, Jr. and Jason L. Unger of GrayRobinson, P.A., Tallahassee, FL, on behalf of Florida Association of Health Plans; Edward J. Pozzuoli and Stephanie Alexander of Tripp Scott, P.A., Fort Lauderdale, FL, on behalf of Florida Hospital Association, the Florida College of Emergency Physicians, the Florida Medical Association, and the American Medical Association; and Bradley Winston, Plantation, FL, Rochelle Bobroff and Michael Schuster, AARP Foundation Litigation, Washington, DC, on behalf of AARP, for Amici Curiae.
BELL, J.
We have for review Westside EKG Associates v. Foundation Health, 932 So.2d 214 (Fla. 4th DCA 2005), in which the Fourth District Court of Appeal certified the following question to be one of great public importance:
ARE THE PROMPT PAY PROVISIONS OF THE HEALTH MAINTENANCE ORGANIZATION ACT ENFORCEABLE BY COURTS IN AN ACTION FOUNDED ON PRINCIPLES OF BREACH OF CONTRACT BROUGHT AGAINST A HMO BY A SERVICE PROVIDER?
*191 Id. at 220. We have jurisdiction,[1] and rephrase the question as follows:
MAY A MEDICAL SERVICE PROVIDER BRING A CAUSE OF ACTION FOR BREACH OF A THIRD-PARTY BENEFICIARY CONTRACT BASED ON ALLEGATIONS THAT THE HMO FAILED TO COMPLY WITH THE "PROMPT PAY PROVISIONS" OF THE HEALTH MAINTENANCE ORGANIZATION ACT?
We answer the rephrased question in the affirmative. A medical service provider may bring a cause of action as a third-party beneficiary to the contract between the health maintenance organization and its subscriber based on allegations that the health maintenance organization failed to comply with section 641.3155, Florida Statutes (2001), the "prompt pay provisions" of the Health Maintenance Organization Act.

FACTS
On September 20, 2001, Westside EKG Associates ("Westside")[2] filed a complaint against seven health maintenance organizations ("HMOs"). After the HMOs unsuccessfully attempted to remove the case to federal court, the case was returned to the Seventeenth Judicial Circuit Court in Broward County, where Westside filed an amended complaint that asserted three causes of action. The only cause of action at issue before us is Westside's common law claim for breach of a third party beneficiary contract.
The amended complaint alleged that "the Defendants' insureds [sic] members sought and received emergency and non-emergency medical services from [Westside] and its physicians under insurance/health maintenance policies." Westside claimed it was a third-party beneficiary to "such insurance/health maintenance contracts," and "[d]espite repeated demands," the defendant-HMOs had breached this contract by, among other things, violating section 641.3155, Florida Statutes (2001), the "prompt pay provisions" of Florida's Health Maintenance Organization Act ("HMO Act"), and sections 641.17-641.3923, Florida Statutes (2001).[3] "As a direct and proximate result of such Breach of the Third Party Beneficiary Contracts," Westside claimed it "suffered damages in the amount of outstanding balances for its charges for services, together with interest and reasonable attorneys fees and costs."
Section 641.3155 provides a time frame in which HMOs must respond to and pay claims properly submitted by medical service providers. At the time Westside filed its complaint in 2001, the pertinent part of the statute read as follows:

*192 641.3155 Payment of Claims. 
. . . .
(2)(a) A health maintenance organization shall pay any clean claim or any portion of a clean claim made by a contract provider for services or goods provided under a contract with the health maintenance organization or a clean claim made by a noncontract provider which the organization does not contest or deny within 35 days after receipt of the claim by the health maintenance organization which is mailed or electronically transferred by the provider.
(b) A health maintenance organization that denies or contests a provider's claim or any portion of a claim shall notify the provider, in writing, within 35 days after the health maintenance organization receives the claim that the claim is contested or denied. The notice that the claim is denied or contested must identify the contested portion of the claim and the specific reason for contesting or denying the claim, and, if contested, must include a request for additional information. If the provider submits additional information, the provider must, within 35 days after receipt of the request, mail or electronically transfer the information to the health maintenance organization. The health maintenance organization shall pay or deny the claim or portion of the claim within 45 days after receipt of the information.
(3) Payment of a claim is considered made on the date the payment was received or electronically transferred or otherwise delivered. An overdue payment of a claim bears simple interest at the rate of 10 percent per year. Interest on an overdue payment for a clean claim or for any uncontested portion of a clean claim begins to accrue on the 36th day after the claim has been received. The interest is payable with the payment of the claim.
(4) A health maintenance organization shall pay or deny any claim no later than 120 days after receiving the claim. Failure to do so creates an uncontestable obligation for the health maintenance organization to pay the claim to the provider.
. . . .
(7)(a) A provider['s] claim for payment shall be considered received by the health maintenance organization, if the claim has been electronically transmitted to the health maintenance organization, when receipt is verified electronically or, if the claim is mailed to the address disclosed by the organization, on the date indicated on the return receipt. A provider must wait 45 days following receipt of a claim before submitting a duplicate claim.
. . . .
(8) A provider, or the provider's designee, who bills electronically is entitled to electronic acknowledgement of the receipt of a claim within 72 hours.
(9) A health maintenance organization may not retroactively deny a claim because of subscriber ineligibility more than 1 year after the date of payment of the clean claim.
(10) A health maintenance organization shall pay a contracted primary care or admitting physician, pursuant to such physician's contract, for providing inpatient services in a contracted hospital to a subscriber, if such services are determined by the organization to be medically necessary and covered services under the organization's contract with the contract holder.
§ 641.3155, Fla. Stat. (2001). In addition, this statute defined the term "clean *193 claim,"[4] imposed nearly reciprocal obligations on providers to respond to an HMO's claim for overpayment, and required that the amount of overpayment be reconciled to specific claims unless the parties agree otherwise. § 641.3155(1), (5)-(6), Fla. Stat. (2001).[5]
The HMOs moved for judgment on the pleadings, which the trial court granted after conducting a hearing on the motion and a later status conference. The trial court's final judgment on the pleadings dismissed Westside's amended complaint with prejudice because it did "not allege cognizable causes of action" under Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842 (Fla.2003).
On appeal, the Fourth District Court of Appeal reversed the trial court and remanded the case for further proceedings. Westside, 932 So.2d at 220. The Fourth District held that Villazon was not "applicable to an action founded on a theory of breach of contract," because, while Villazon denies the existence of a private cause of action under the HMO Act, it also "acknowledge[s] the plaintiff's underlying right to bring a common law negligence claim based upon the same allegations." Id. at 216 (citing Villazon, 843 So.2d at 852). In assessing whether Westside has an available breach of contract claim, the Fourth District relied on the "accepted principle of law that when parties contract upon a matter which is the subject of statutory regulation, the parties are presumed to have entered into their agreement with reference to such statute, which becomes a part of the contract." Id. It then recognized that "[s]ervice providers are recognized as third party beneficiaries of insurance contracts in other contexts" and that an insurer's failure to pay a medical service provider is a valid basis for a breach of contract action. Id. at 219 (citing Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885 (Fla.2003)). Based on this analysis, the Fourth District ultimately "conclude[d] that service providers, claiming as third party beneficiaries under a subscriber's contract, may bring an action founded on the HMOs' failure to comply with the prompt pay provisions of the [HMO] Act." Id. at 220. "Recognizing the potential impact of this decision on the [HMO] industry," the Fourth District certified the above stated question as one of great public importance. Id.
We agree with the Fourth District. As we explain below, medical service providers may bring a breach of contract action as a third-party beneficiary of the contract between the HMO and its subscriber based upon the HMO's failure to comply with section 641.3155, Florida Statutes (2001).

ANALYSIS
I. Framework for Review
The question at issue requires us to interpret the HMO Act, particularly section 641.3155, its "prompt pay provisions;" *194 therefore, the standard of review is de novo. See Aramark Unif. & Career Apparel, Inc. v. Easton, 894 So.2d 20, 23 (Fla.2004) (recognizing that questions of statutory interpretation are reviewed de novo).
The HMO Act does not expressly authorize a private cause of action to enforce its provisions. However, as the Fourth District correctly observed, "[t]his does not . . . preclude the right to bring a common law . . . claim based upon the same allegations." Villazon, 843 So.2d at 852, cited in Westside, 932 So.2d at 216; see also Greene v. Well Care HMO, Inc., 778 So.2d 1037, 1041-42 (Fla. 4th DCA 2001) (finding that the HMO Act does not authorize a private cause of action, but permitting appellants to amend their complaint to state a common law cause of action based on the HMO's allegedly improper action).
In this case, Westside has asserted the breach of a third-party beneficiary contract. Assuming the complaint sufficiently alleges each of the four elements of this cause of action,[6] we must decide (1) whether the "prompt pay provisions" of the HMO Act can be incorporated into the contract between the HMO and its subscribers, and (2) whether Westside's status as a nonparticipating provider precludes it, as a matter of law, from establishing that the contracting parties had a "clear or manifest intent" to benefit Westside. We conclude that, given the significant statutory regulation surrounding HMO contracts and the integral role the "prompt pay provisions" play in them, section 641.3155 may be incorporated into the HMO contract. Then, recognizing that medical service providers previously have been considered intended beneficiaries of insurance contracts under Florida law, we extend the same recognition to HMO contracts. In essence, we conclude that unless the language of the specific contracts properly provides otherwise, Westside's status as a nonparticipating provider does not preclude it, as a matter of law, from establishing the intent element in a breach of third-party beneficiary contract claim. These conclusions are explained in more detail below.

A. Elements of Breach of a Third-Party Beneficiary Contract Claim
As the Fourth District correctly held, an allegation that an HMO violated the "prompt pay provisions" is not sufficient by itself to establish a private cause of action. Westside, 932 So.2d at 216 (citing Villazon, 843 So.2d at 852). Instead, a party must bring a recognized common law cause of action. As stated earlier, one of the claims Westside attempted to plead in its amended complaint was a common law cause of action for breach of a third-party beneficiary contract.
To establish an action for breach of a third party beneficiary contract, Westside *195 must allege and prove the following four elements: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." Networkip, LLC v. Spread Enters., Inc., 922 So.2d 355, 358 (Fla. 3d DCA 2006) (citing Biscayne Inv. Group, Ltd. v. Guar. Mgmt. Servs., Inc., 903 So.2d 251, 254 (Fla. 3d DCA 2005)). While we decline to decide from the limited record on appeal whether Westside's complaint is sufficient to establish each of these elements, we find no support for the HMOs' assertion that Westside is precluded as a matter of law from pursuing such a cause of action. See A.R. Moyer, Inc. v. Graham, 285 So.2d 397, 402 (Fla.1973) ("Without viewing the [contract at issue], which is absent from the record, we are unable to speculate if a cause of action would exist."). As the Fourth District correctly concluded, section 641.3155 can be incorporated into the HMO contract. Such an incorporation supports the first and third elements of the claim. Moreover, there is no basis to conclude that Westside is precluded, as a matter of law, from establishing the second element because of its status as a nonparticipating provider.

B. Statutory Incorporation
As stated earlier, we conclude that section 641.3155 (the "prompt pay provisions") may be incorporated into an HMO contract for the purpose of establishing a breach of contract cause of action when the provider's claim is for a service the HMO is required to provide under either the HMO Act or the HMO contract at the time the claim is filed.
Florida courts have long recognized that the statutory limitations and requirements surrounding traditional insurance contracts may be incorporated into an insurance contract for purposes of determining the parties' contractual rights. See Citizens Ins. Co. v. Barnes, 98 Fla. 933, 124 So. 722, 723 (1929) (finding an ordinance is "part of the contract of insurance" because there was no reason not to apply the "general doctrine that, where parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes a part of the contract"); see also Weldon v. All Am. Life Ins. Co., 605 So.2d 911, 914 (Fla. 2d DCA 1992) (applying the general principle to determine the extent to which a chiropractor's services were covered under an insurance policy). As are traditional insurance contracts, HMO contracts are surrounded by the extensive "statutory limitations and requirements" of the HMO Act. Therefore, for purposes of statutory incorporation, HMO contracts should be treated the same as traditional insurance contracts. See Pasteur Health Plan, Inc. v. Salazar, 658 So.2d 543, 544 (Fla. 3d DCA 1995) (upholding a trial court's decision that used five Florida statutes to define a term in an HMO contract, and quoting U.S. Fid. & Guar. Co. v. Group Health Plan of SE. Mich., 131 Mich.App. 268, 345 N.W.2d 683, 685 n. 1 (1983), for the proposition that "[a]lthough . . . HMOs are not (traditionally defined) insurance companies, . . . the same contract construction rules apply"). So treated, the principles of statutory incorporation permit the "prompt pay provisions" of section 641.3155 to be considered an implicit part of every HMO contract. Cf. State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 832 (Fla.1993) (finding a provision of the Florida Insurance Code was an "implicit part of every insurance policy issued in Florida" because the statute addressed *196 a subject that was present in every insurance dispute and because another provision of the Florida Insurance Code supported incorporating this statute).
Admittedly, the HMO Act does not mandate that section 641.3155 be included in HMO contracts. Nonetheless, as a number of other provisions reveal, the "prompt pay provision" serves an integral role in providing substance or structure to the rights of subscribers and the responsibilities of HMOs established in the HMO Act. For example, section 641.3154 states that an HMO "is liable for services rendered to an eligible subscriber by a provider if the provider follows the [HMO]'s authorization procedures and receives authorization," § 641.3154(2); and that if an HMO is liable for services rendered, "regardless of whether a contract exists between the [HMO] and the provider . . . the subscriber is not liable for payment of fees to the provider." § 641.3154(1). Section 641.3156(1) requires HMOs to pay "any hospital-service or referral-service claim for treatment for an eligible subscriber which was authorized" by an appropriate person and in an appropriate manner. In fact, "[a] claim for treatment may not be denied" in this situation, "unless the provider provided information to the [HMO] with the willful intention to misinform the [HMO]." § 641.3156(2). The details set forth in the "prompt payment provision," section 641.3155, provide essential substance to the HMO's liability for services rendered to its subscribers.
Moreover, the HMO Act does not foreclose a common law contract action for breach of the statutorily imposed prompt payment provision. Indeed, the HMO Act contemplates actions "to enforce the terms and conditions of a[n] [HMO] contract," and it recognizes that these actions may be brought against an HMO. § 641.28 (recognizing that attorney's fees are available to the prevailing party in a civil action "brought to enforce the terms and conditions of a health maintenance organization contract," and not including HMOs in the list of exempt persons); see also § 641.282 (requiring HMOs to pay "every judgment or decree entered in any of the courts of this state against" the HMO within a specified time frame). In addition, even the statute authorizing the statewide provider and managed care organization dispute resolution program (which was enacted in 2000 to address payment disputes) does not bar civil actions to enforce the HMO contract. See § 408.7057, Fla. Stat. (2001). To the contrary, this statute forbids the resolution organization from reviewing certain claims disputes, such as those "related to interest payment[s]," and those that either fail to meet a specified jurisdictional amount or form "the basis for an action pending in state or federal court." § 408.7057(2)(b)(1), (6). Neither this statute nor the HMO Act provides that the dispute resolution program is the exclusive means of addressing these claims.
Here, the statutory language recognizing that a civil cause of action may be brought to enforce the HMO contract is particularly persuasive. HMOs enter into these contracts "to provide an agreed-upon set of comprehensive health care services to subscribers in exchange for a prepaid [fee]." § 641.31(1). As stated earlier, section 641.3155 simply provides essential details of how the HMOs are to pay medical providers for these services. In light of this, it is difficult to see how any HMO could enter into such contracts without assuming that the "prompt payment provision" is implicit therein.
Given the above, we conclude that unless the terms of the individual HMO contract or the HMO Act properly provides otherwise, section 641.3155 may be incorporated as a term in the HMO contract for the *197 purpose of alleging a breach of third-party beneficiary contract claim.

C. Clear Intent to Primarily and Directly Benefit
Having concluded that the "prompt pay provisions" may be incorporated into the HMO contract, we next consider whether nonparticipating providers like Westside can overcome the significant hurdle of establishing the second element of a breach of third-party contract; that is, whether the HMO contract evinces a "clear or manifest intent" to "primarily and directly benefit" the provider. Jenne v. Church & Tower, Inc., 814 So.2d 522, 524 (Fla. 4th DCA 2002) (citing Marianna Lime Prods. v. McKay, 109 Fla. 275, 147 So. 264, 265 (1933), for the proposition that the test to determining whether a party is a third-party beneficiary to a contract is whether the contract language indicates that both parties intended that the contract "primarily and directly" benefit the third party). We find no basis to preclude nonparticipating providers from attempting to establish this element as a matter of law. As recognized by the Fourth District, Florida law recognizes medical service providers as intended beneficiaries of insurance contracts. See Vencor Hosps. v. Blue Cross Blue Shield of R.I., 169 F.3d 677, 680 (11th Cir.1999) (applying Florida law to determine that medical service providers are third-party beneficiaries to a contract between a health insurer and its subscriber); see also Orion Ins. Co. v. Magnetic Imaging Sys. I, 696 So.2d 475, 478 (Fla. 3d DCA 1997) ("Medical service providers . . . have been recognized as third party beneficiaries of insurance contracts."). Within the limitations of our holding, we extend this same recognition to the HMO context.
This recognition of medical services providers as third-party beneficiaries of HMO contracts is supported by statutory requirements. The HMO Act requires that the HMO contract indicate an intent to compensate nonparticipating providers for at least "emergency services and care." See § 641.31(4), Fla. Stat. (requiring that a subscriber's contract "clearly state all of the services to which a subscriber is entitled under the contract and . . . where and in what manner the comprehensive health care services may be obtained"); § 641.513(3)(a) (requiring HMOs to "compensate the provider for emergency services and care"). The Act also prohibits an HMO from waiving this benefit in the contract, and it states that contractual provisions which contradict this provision must be construed in accordance with the Act. See § 641.31(11) ("No contract shall contain any waiver of rights or benefits provided to or available to subscribers under the provisions of any law or rule applicable to health maintenance organizations."); § 641.3105(1) (contracts or portions thereof that do not comply with the HMO Act "shall be construed and applied" as if they complied). Since part of Westside's complaint alleges the right to recover compensation for emergency services and care, Westside may be able to allege and establish that the language of the contract evinces "the clear or manifest intent of the contracting parties that the contract primarily and directly benefit" Westside. Networkip, LLC, 922 So.2d at 358; cf. Vencor Hospitals, 169 F.3d at 680 (finding medical service providers were intended beneficiaries because "[i]t would be hard to imagine a more direct benefit under a contract than the receipt of large sums of money").
Furthermore, recognizing nonparticipating medical service providers as third-party beneficiaries is supported by a contract clause the HMOs referred to in their brief *198 on appeal.[7] In applicable part, the clause states:
For services rendered by Non-Participating Providers, Benefits are payable to the [subscriber] or other person as required by law. However, [the HMO] may pay all or a portion of any medical Benefits to the Health Care Provider on whose charge the claim is based unless the Covered Person directs otherwise in writing by the time proofs of loss are filed with [the HMO].
Like the language analyzed in Vencor Hospitals, 169 F.3d at 680, this clause grants the HMO discretion to pay nonparticipating providers for services rendered to the HMOs' insureds.[8] In Vencor Hospitals, the Eleventh Circuit viewed this discretion as evidence that the contracting parties intended to primarily and directly benefit the medical provider. Id. Moreover, the differences between the clause in this case and the language cited in Vencor Hospitals do not require a different conclusion. While the clause grants insureds the authority to remove the HMOs' discretion, the HMOs do not allege that the insureds have done so in regard to any of Westside's claims. Furthermore, this excerpt also requires HMOs to pay "other person[s] as required by law," and under the HMO Act, even nonparticipating providers may be persons entitled to payment by law. See, e.g., § 641.3155(4) (recognizing that an HMO's failure to pay or deny "any claim no later than 120 days after receiving [it] . . . creates an uncontestable obligation"). Therefore, contrary to the HMOs' assertion, this clause actually appears to support Westside's allegation that it is an intended third-party beneficiary to the HMO contracts with respect to at least some of its claims.[9]
Based on the foregoing, we conclude that nonparticipating providers such as Westside are not precluded as a matter of law from alleging and establishing that the HMO contract evinces a "clear and manifest intent" to "primarily and directly benefit" them.

CONCLUSION
For the reasons explained above, we answer the certified question as rephrased in the affirmative. Accordingly, we approve the decision of the Fourth District Court of Appeal and remand this case for further proceedings.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
CANTERO, J., recused.
NOTES
[1] See art. V, § 3(b)(4), Fla. Const.
[2] In its amended complaint, Westside described itself as a professional association and alleged that its physicians provide various types of echocardiogram ("EKG") interpretations, as well as Doppler color flow interpretations, Holter twenty-four-hour interpretations, stress test physician supervision, and stress test interpretations.
[3] Although Westside's count for breach of third-party beneficiary contract does not specifically mention section 641.3155, this count incorporated Westside's general allegations concerning the prompt pay provision of section 641.3155, alleging that the HMOs failed to make payment or contest payment within forty-five days. Westside specifically alleged violations of section 641.3155 as well as section 627.613, Florida Statutes (2001), in the other two counts of its amended complaint. Section 627.613 provides time periods in which health insurers must pay claims for medical services. It imposes requirements similar to section 641.3155; however, HMOs with a valid certificate of authority are excluded from the provisions of the Florida Insurance Code, unless expressly stated otherwise. See §§ 641.201, 641.30(2), Fla. Stat.
[4] In essence, a "clean claim" is defined in section 641.3155(1), Florida Statutes (2001), as a claim submitted without any defect or impropriety and with the proper substantiating paperwork. This term does not appear in the current version of section 641.3155, as the statute now defines a "claim" as the appropriate paper or electronic billing instrument. § 641.3155(1), Fla. Stat. (2005).
[5] Section 641.3155 has been amended numerous times since Westside filed its complaint in 2001. We do not decide what effect, if any, these amendments may have on a party's ability to establish the required elements of a breach of third-party beneficiary contract in its case. However, none of these amendments affect the holding that medical service providers, in general, may bring this cause of action based on an alleged violation of the prompt pay provision.
[6] For the purpose of this appeal, we do not determine whether Westside's complaint sufficiently pled each of the elements required to state this cause of action. See Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028, 1031-32 (Fla. 4th DCA 1994) (providing the elements that must be pleaded to state a cause of action for breach of third-party beneficiary contract and granting the plaintiff an opportunity to amend its complaint to explicitly allege the primary and direct intent element); see also Weimar v. Yacht Club Point Estates, Inc., 223 So.2d 100, 103 (Fla. 4th DCA 1969) ("[I]t behooves one seeking to establish a cause of action as a third party beneficiary to sufficiently allege the terms and provisions of the contract which he asserts was made for his benefit. Failure to do so may result in dismissal of the cause. . . ."). We assume, arguendo, that Westside has stated a cause of action and recognize that the trial court may address this issue on remand.
[7] See Initial Br. of Foundation Health Plan at 5; Amicus Br. of Florida Association of Health Plans at 16.
[8] The contract language evaluated in Vencor Hospitals stated that "[b]enefit payments may be paid to the doctor, hospital or to [the insured] directly at our discretion." 169 F.3d at 680.
[9] To the extent other clauses in the individual HMO contracts evince a contrary intent, this is a determination we leave to the trial court.