# Supreme Court of Florida

---

No. SC21-369

---

**SUAREZ TRUCKING FL CORP., et al.,**
Petitioners,

vs.

**ADAM J. SOUDERS, et al.,**
Respondents.

October 20, 2022

PER CURIAM.

This case presents the question whether a binding settlement agreement was formed pursuant to the provisions of section 768.79, Florida Statutes (2014), Florida's offer of judgment and demand for judgment statute, when the defendant in a tort action, Suarez Trucking, filed a written notice accepting an offer of settlement made by the plaintiff, Adam Souders. In *Suarez Trucking FL Corp. v. Souders*, 311 So. 3d 263, 272 (Fla. 2d DCA 2020), the Second District Court of Appeal affirmed the trial court's order denying Suarez Trucking's motion to enforce settlement agreement, holding

that the written notice of acceptance was not sufficient to form a binding contract and that the settlement check tendered pursuant to the offer of settlement was deficient because it included as a payee—along with Souders and his counsel—the carrier holding a workers' compensation lien created by operation of section 440.39, Florida Statutes (2014).

The Second District's decision is in express and direct conflict with the decision of the Fourth District Court of Appeal in *Cirrus Design Corp. v. Sasso*, 95 So. 3d 308, 312 (Fla. 4th DCA 2012), which held that the filed acceptance of an offer under the offer of judgment and demand for judgment statute resulted in the formation of a substituted agreement and that performance thus was not necessary to the formation of the settlement contract. We therefore have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

On the conflict issue—whether a settlement contract was formed—the framework of offer and acceptance established by section 768.79 as well as basic contract principles support the conclusion that the Second District erred in holding that no contract was formed. On this point, as Judge Atkinson explains in his cogent dissent, the district court majority erroneously conflates

acceptance with performance and errs in its understanding of what is required to manifest acceptance of an offer inviting a promissory acceptance.

We decline to go beyond the conflict issue to address whether Suarez Trucking—by tendering the settlement check to Souders with the workers' compensation lienor named as a payee—breached the settlement agreement. Because of their focus on the issue of contract formation, the parties have never fully argued issues related to breach and remedy. Those issues should be resolved on remand, uninfluenced by the erroneous view of contract formation adopted by the Second District.

**I.**

Section 768.79(4) provides: "An offer shall be accepted by filing a written acceptance with the court within 30 days after service. Upon filing of both the offer and acceptance, the court has full jurisdiction to enforce the settlement agreement." Subsection (5) of the statute provides that "[a]n offer may be withdrawn in writing which is served before the date a written acceptance is filed" and that "[o]nce withdrawn, an offer is void." A related rule provision found in Florida Rule of Civil Procedure 1.442(f)(1) states that in

connection with an offer and acceptance under section 768.79(4), "[n]o oral communications shall constitute an acceptance, rejection, or counteroffer."

This framework recognizes a simple and straightforward process in which after a written offer is made under the statute, if an acceptance of that offer is timely filed, an enforceable settlement agreement is thereby created. The framework contemplates that a filed acceptance constitutes a promise to perform in accordance with the terms of the offer. Given the statute's requirement that an offer and any acceptance be written, oral discussions surrounding the offer and acceptance are—as rule 1.442(f)(1) makes clear—of no consequence to the formation of a contract. Once a proper acceptance—that is, an unqualified acceptance—is filed as specified in the statute, that's it: a settlement contract has been entered to resolve the litigation. All that remains is for performance of the settlement terms to be carried out. This is the framework established by the statute, and parties desiring to obtain the potential benefit afforded by the statute are bound to operate within its parameters.

Here, the offer of settlement made by plaintiff Souders on February 25, 2015, expressly pursuant to section 768.79 and rule 1.442, provided that the defendants "shall pay $500,000.00 to the Plaintiff . . . within ten (10) days from the date of acceptance."  The offer also contained the condition that "[u]pon acceptance and payment of the Proposal for Settlement, Plaintiff . . . will enter dismissal with prejudice against Defendants."  In response, on March 26, 2015, Suarez Trucking filed a notice of acceptance stating simply that "pursuant to Florida Statutes 769.89 and Florida Rule 1.442 [notice is given] that Defendants *accept Plaintiff's Proposal for Settlement* made to Defendants, dated February 25, 2015."  (Emphasis added.)  This notice of acceptance created a binding settlement contract by unequivocally and fully assenting to the terms of the offer.  It is hard to imagine a form of acceptance that could be more clear or more effective.

## II.

Avoiding this reality, the Second District invokes and misapplies "the strict common-law rule applicable to offers generally—the so-called 'mirror image' rule that generally requires the acceptance to be in every respect identical to the offer."

- 5 -

16 Richard A. Lord, *Williston on Contracts* § 49:40 (4th ed. 2014). The Second District denigrates Suarez Trucking's acceptance as ineffectual "boilerplate" that "lacked specificity," holding that under the mirror-image rule, Suarez Trucking could only manifest its acceptance of the offer by reciting back the terms of the offer. *Suarez Trucking*, 311 So. 3d at 269. In support of this conclusion, the Second District cites not a single case in which the mirror-image rule has been applied in a similar way.

The Second District, in a view adopted by the dissent, also erroneously sets up a dichotomy between the operation of section 768.79 together with rule 1.442 and the formation of a binding settlement contract, asserting that, as the dissent says, the statute and rule do not "specif[y] the requirements for formation of the settlement agreement itself." Dissenting op. at 1.

Pointing to oral communications between the parties, the Second District—once again echoed by the dissent—raises the specter that recognizing the formation of a contract between the parties here would somehow allow unilateral alteration of the terms of the settlement. *See Suarez Trucking*, 311 So. 3d at 271; dissenting op. at 7. The Second District also erroneously contends

that the offer of settlement could only be accepted by performance—rather than by a promissory acceptance. *See Suarez Trucking*, 311 So. 3d at 269.

None of these positions can be reconciled either with the provisions of the statute or with general rules of contract law.

**III.**

Basic contract law has long established that "[i]n order to create a contract, it is essential that there should be a reciprocal assent" to the contract terms. *Strong & Trowbridge Co. v. H. Baars & Co.*, 54 So. 92, 93 (Fla. 1910). The "assent must be precisely [to] the same thing." *Id.* That is, the acceptance must mirror the offer. "Consequently, if one assents to a certain thing and the other assents to it only with modifications . . . no agreement or contract arises therefrom." *Id.* We have said that "in determining whether there has been a mutual consent to a contract,"

> [t]he rule is probably best expressed by the late Justice Holmes in "The Path of the Law," 10 Harvard Law Review 457, where it was stated in part that "The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing."

*Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957).[1]  There must therefore be an objective manifestation by both parties of assent to the same terms.  This is a rule of consistency.  It is not—as the Second District would have it—a rule of regurgitation.

The "general rule at common law" is simply "that [an] acceptance must comply with [the] terms of [the] offer":

> If a promise is requested, that promise must be made absolutely and unqualifiedly.  This *does not necessarily mean that the precise words of the requested promise must be repeated*, but rather that, by a positive and unqualified assent to the proposal, the offeree must in effect agree to make precisely the promise requested.

2 Lord, *Williston on Contracts* § 6:11 (4th ed. 2007) (emphasis added).

Here, the promise made by Suarez Trucking in the filed notice of acceptance was "made absolutely and unqualifiedly," and Suarez Trucking "agreed to make precisely the promise requested."  It was of no consequence that "the precise words of the requested promise" were not repeated.  The filed acceptance constituted "a positive and unqualified assent to the proposal" of settlement.  That's what the

---

1.  The common law rule has been modified with respect to transactions in goods.  *See* § 672.207, Fla. Stat. (2021).

law requires for an acceptance to be effective. *See Hanson v. Maxfield*, 23 So. 3d 736, 739 (Fla. 1st DCA 2009) ("The May 13 letter, written on behalf of the Hansons, states that it 'accepts your settlement offer made on behalf of your clients in your April 15, 2005, letter.' Thus, the May 13 letter is an unequivocal and unconditional acceptance of the offer made in the April 15 letter."); *see also* Restatement (Second) of Contracts § 30, illus. 3 (Am. Law Inst. 1981) ("A orally offers to sell and deliver to B 100 tons of coal at $20 a ton payable 30 days after delivery. B replies, "I accept your offer." B has manifested assent in a sufficient form . . . ."); *id.* § 32, illus. 5 ("A mails a written order to B, offering to buy specified machinery on specified terms. The order provides, 'Ship at once.' B immediately mails a letter to A, saying 'I accept your offer and will ship at once.' This is a sufficient acceptance to form a contract.").

Nothing in section 768.79 or rule 1.442 is at odds with these basic rules of contract law regarding offer and acceptance and mutual assent. Indeed, the statute and rule operate against the backdrop of those legal principles. When the statute refers to "offer" and "acceptance," the statute speaks the language of contract. But the statute—as implemented by the rule—specifies a

- 9 -

particular mode for the offer and acceptance: both must be written. Accepting the position that a valid offer and acceptance under the statute do not necessarily result in an enforceable settlement contract would unnecessarily inject incoherence into the law.

In line with the purpose of establishing a clear-cut basis for the imposition of sanctions on a litigant who rejects a settlement proposal in the circumstances specified in the statute, the statutory framework does not envision a process of negotiation regarding settlement terms. On the contrary, it authorizes settlement proposals that are by their very nature take-it-or-leave-it propositions. The statutorily required written offer and acceptance are not affected by other communications between the litigants. That understanding of the operation of the statute is clearly reflected in the provision of rule 1.442(f)(1) that "[n]o oral communications shall constitute an acceptance, rejection, or counteroffer."

The focus of the Second District and the dissent on such communications between the parties here flows from a serious misconception regarding settlements pursuant to the statute. This is illustrated by *Scope v. Fannelli*, 639 So. 2d 141 (Fla. 5th DCA

- 10 -

1994), in which the court rejected a claim that a counteroffer had terminated an offer made under section 768.79. In rejecting that claim, the court reasoned that subsection (5) of the statute permits an offeror to withdraw an offer in writing with service effected before an acceptance is filed, but that "[n]o alternative method of reducing the time for acceptance is provided by the statute." *Scope*, 639 So. 2d at 143. Accordingly, regardless of communications between the parties concerning the offer, absent a withdrawal of the offer in accordance with the statutory provisions, the offer will remain open until the statutory 30-day offer period has passed. From this holding it follows that—whatever may have passed between the parties—an acceptance filed in accordance with the statute before an offer has either been withdrawn or expired will be effective to create a settlement contract based on the terms of the offer.

So when a settlement offer is made under the statute, the process must play out according to the requirements of the statute and rule. Of course, the parties are always free to negotiate and enter a settlement on any basis to which they mutually assent. Such a negotiating process undertaken outside the statutory

framework obviously is not subject to the requirements or benefits of the statute and rule.

There is no support for the claim that recognizing the existence of a contract here authorizes the accepting party to unilaterally alter the contract. To the extent that such a claim points to issues concerning whether a breach of the settlement contract occurred, the matter is beyond the scope of the conflict issue, and we do not address it here.

Finally, the Second District's contention that the offer made by Souders contemplated that acceptance could only be effected by performance is refuted by the plain terms of the offer. The Second District rests its position on this issue on the reference in the settlement offer to "acceptance and payment." *Suarez Trucking*, 311 So. 3d at 270. But this language—understood in context—indicates exactly the opposite of what the Second District says it means. The settlement offer makes a clear distinction between acceptance and performance rather than equating acceptance with performance. This is shown most vividly in the specification that performance by payment must occur within ten days from the date of acceptance. The offer thus clearly contemplates a two-step process in which

acceptance is followed by performance. This, of course, is consistent with the statute, which provides for acceptance by the filing of a notice of acceptance rather than acceptance by performance.

## IV.

There is no basis to support the Second District's conclusion that a settlement contract could only be formed by performance or that Suarez Trucking's acceptance was otherwise defective. We therefore quash the decision on review. And we approve the conflict decision in *Cirrus* to the extent that it is consistent with our analysis here.

It is so ordered.

MUÑIZ, C.J., and CANADY, POLSTON, COURIEL, and
GROSSHANS, JJ., concur.
CANADY, J., concurs with an opinion, in which POLSTON, J.,
concurs.
LABARGA, J., dissents with an opinion.
FRANCIS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION
AND, IF FILED, DETERMINED.

CANADY, J., concurring.

Although I do not dissent from the majority's conclusion that fuller briefing of the issues related to breach and remedy is

appropriate, based on what has been presented thus far by the parties it appears doubtful to me that any breach of the settlement agreement occurred. And it must be acknowledged that the resolution of the breach issue has serious implications for the integrity of the legal framework for the protection of statutory workers' compensation liens.

Under the Workers' Compensation Law, an employee injured in the course of employment by a third-party tortfeasor may accept workers' compensation benefits and also sue the third-party tortfeasor. § 440.39(1), Fla. Stat. (2021). In such circumstances, the employee "shall sue for the employee individually and for the use and benefit of the employer, if a self-insurer, or employer's insurance carrier." § 440.39(3)(a), Fla. Stat. Under the statute, the employer or carrier obtains lien rights:

> Upon suit being filed, the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employee or his or her dependents, which notice shall constitute a lien upon any judgment or settlement recovered to the extent that the court may determine to be their pro rata share for compensation and medical benefits paid or to be paid under the provisions of this law, less their pro rata share of all court costs expended by the plaintiff in the prosecution of the suit including reasonable attorney's fees for the plaintiff's attorney.

- 14 -

*Id.*

The statute thus provides for the judicial determination of the amount recoverable under such workers' compensation liens. *Id.* Specific provision is made regarding settled third-party tort claims:

> If the employer or insurance carrier has given written notice of his or her rights of subrogation to the third-party tortfeasor, and, thereafter, settlement of any such claim or action at law is made, either before or after suit is filed, and the parties fail to agree on the proportion to be paid to each, the circuit court of the county in which the cause of action arose shall determine the amount to be paid to each by such third-party tortfeasor . . . .

§ 440.39(3)(b), Fla. Stat.

The Second District itself has recognized that under these provisions of the statute, in the event of a dispute on the question, an employee's "right to the distribution of any portion of his third-party settlement did not arise until the trial court determined the amount of the [workers' compensation] lien." *City of Tampa v. Norton,* 681 So. 2d 811, 812 (Fla. 2d DCA 1996); *see also Circle K Corp./AIG Claims Servs., Inc. v. Webster,* 747 So. 2d 1010, 1011 (Fla. 5th DCA 1999) ("Where a case is settled in lieu of suit or during the pendency of a suit and the tortfeasor has notice of the employer's interest in the settlement, the case should not be settled

- 15 -

without the consent of the carrier or employer in order to protect the employer to the extent of benefits conferred.").

It is undisputed that the parties here were subject to the provisions of section 440.39 and that they were on notice of the carrier's lien rights. Indeed, Souders said this in his brief submitted to the Second District:

> [T]he record reflects that, both before and after the plaintiff's offer was made, plaintiff's counsel had advised Suarez Trucking's counsel that his client had a statutory obligation to satisfy the compensation carrier's lien; that he fully intended to do so in accordance with Florida law; and that he had been actively involved in negotiating the amount of the lien with counsel for the compensation carrier . . . .

In line with this statute and the acknowledgement of lien rights by Souders, Suarez Trucking now argues that it simply did what "is customary when faced with a lienholder: it included that lienholder on the settlement check." Suarez Trucking further argues that under section 440.39 if it "failed to include [the workers' compensation carrier] on the settlement check and protect the lien, it could have faced a cause of action for impairment of lien or for subrogation."

In support of these points, Suarez Trucking cites cases recognizing the duty of settling parties to protect lien rights. *See, e.g.*, *Hall, Lamb & Hall, P.A. v. Sherlon Invs. Corp.*, 7 So. 3d 639, 641 (Fla. 3d DCA 2009) ("There is no question that as a party to the settlement, Sherlon had an affirmative duty to notify the law firm of the settlement and to protect the law firm's lien interest in the settlement proceeds."); *Dade County v. Pavon*, 266 So. 2d 94, 97 (Fla. 3d DCA 1972) ("We hold that the statute placed upon the appellee a duty to make no settlement until the possible existence of a hospital lien was determined."); *see also Geico Gen. Ins. Co. v. Steinger, Iscoe & Greene-II, P.A.*, 275 So. 3d 775, 777 (Fla. 3d DCA 2019) (holding that insurer had a "duty to protect [law firm's] attorney's lien by notifying [law firm] of the settlement, including [the law firm] on the settlement check or obtaining [law firm's] waiver of its lien in writing, or obtaining a Hold Harmless agreement from [firm receiving settlement proceeds]"). To the extent that Suarez Trucking can establish the existence of such a duty arising from section 440.39, it appears that analysis of the breach of contract issue should take that statute-based duty into account.

- 17 -

The relevance of background legal requirements to the obligations of contracting parties is by no means a novel concept in our law. "Florida courts have long recognized that the statutory limitations and requirements surrounding traditional insurance contracts may be incorporated into an insurance contract for purposes of determining the parties' contractual rights." *Found. Health v. Westside EKG Assocs.*, 944 So. 2d 188, 195 (Fla. 2006). The issue of statutory incorporation has arisen most frequently in the insurance context, but our treatment of the incorporation of statutory provisions in that context is based on a more sweeping principle of statutory incorporation. We have held broadly that

> in construing a contract, it is well established that "the laws existing at the time and place of the making of the contract and where it is to be performed which may affect its validity, construction, discharge and enforcement, enter into and become a part of the contract as if they were expressly referred to or actually copied or incorporated therein."

*City of Homestead v. Beard*, 600 So. 2d 450, 454-55 (Fla. 1992) (quoting *Shavers v. Duval County*, 73 So. 2d 684, 689 (Fla. 1954)).

This principle of contract law is indeed venerable and widely acknowledged. *See Von Hoffman v. City of Quincy*, 71 U.S. 535, 550 (1866) ("It is also settled that the laws which subsist at the time and

place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.  This principle embraces alike those which affect its validity, construction, discharge, and enforcement. . . . These are as much incidents and conditions of the contract as if they rested upon the basis of a distinct agreement."); Richard A. Lord, *Williston on Contracts* § 30:19 (4th ed. 2012) ("Under [the generally applicable] presumption of incorporation, valid applicable laws existing at the time of the making of a contract enter into and form a part of the contract as fully as if expressly incorporated in the contract.  Thus, contractual language must be interpreted in light of existing law, the provisions of which are regarded as implied terms of the contract, regardless of whether the agreement refers to the governing law." (footnotes omitted.)).

As Souders admits, the parties here were subject to the provisions of section 440.39.  Souders was required by law to bring his third-party tort claim not only for his own benefit, but also for "the use and benefit" of the workers' compensation carrier.  He was not entitled to the disbursement of funds paid in settlement of his claim prior to an agreed or judicially determined resolution of the

- 19 -

workers' compensation lien. The settlement funds provided to Souders indisputably were legally encumbered by the lien.

When the contract is understood in light of these existing relationships and obligations, as is required by the well-established rule of incorporation, it is hard to see how Suarez Trucking's tender of the settlement check with the workers' compensation carrier named as a payee could be a breach—much less a material breach—of the settlement agreement. The tender of the check in that form simply acknowledged binding legal obligations that the parties to the settlement necessarily understood to exist and that they were expressly committed to honoring.

The autonomy of contracting parties is not compromised by the presumption that the contractual obligations they undertake are informed by and subject to legal obligations arising from the laws that exist when the contract is entered. And it is hard to fathom how a breach of contract can arise from action by a party— similar to the action by Suarez Trucking here—to require that the performance of contractual obligations be in harmony with such laws.

POLSTON, J., concurs.

LABARGA, J., dissenting.

I agree with the majority that the Second District improperly applied the "mirror image" rule in determining the enforceability of the settlement agreement in this case. However, I ultimately agree with the district court that the parties' failure to reach a meeting of the minds as to a material term rendered the settlement agreement unenforceable. Consequently, I dissent.

Relying on a terse application of section 768.79, Florida Statutes (2014), and Florida Rule of Civil Procedure 1.442, the majority concludes that petitioner Suarez Trucking (Suarez) and respondent Souders formed a binding settlement agreement. Section 768.79 and rule 1.442 contain the requirements for court approval and enforcement of a settlement agreement, but neither specifies the requirements for formation of the settlement agreement itself. A court's authority to ratify a settlement agreement and enter a judgment accordingly is distinct from the formation of the settlement agreement. *See Wright v. Caruana*, 640 So. 2d 197, 198 (Fla. 3d DCA 1994) ("[Section 768.79(1)] does not prevent an offeree from actually accepting an untimely offer and avoiding trial; it merely prevents the offer from later serving as the

basis for an award of costs and attorney's fees under the statute.");

*Gallagher v. Dupont*, 918 So. 2d 342, 347 (Fla. 5th DCA 2005) ("A consent judgment is a judicially approved contract . . . ."); *Mady v. DaimlerChrysler Corp.*, 59 So. 3d 1129, 1133 (Fla. 2011) ("A resolution reached pursuant to the *offer of judgment* statute, as opposed to an extrajudicial settlement agreement that is not subject to judicial enforcement bears the imprimatur of a court. . . ."). The former is governed by the statute and rule, and the latter is governed by general contract law.

Even though the parties may have adhered to the procedural requirements set forth in section 768.79 and rule 1.442, that is only part of the analysis. The parties' adherence to those requirements is—and must be—secondary to whether a valid settlement agreement exists.

A settlement agreement, like all other contracts, is formed when there is mutual assent and a meeting of the minds, which requires an offer and an acceptance supported by valid consideration. *See Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985); *Perkins v. Simmons*, 15 So. 2d 289, 290 (Fla. 1943); *see also Pena v. Fox*, 198 So. 3d 61, 63 (Fla. 2d DCA 2015). If an

offeree's acceptance deviates from an offer's essential terms, it is not an acceptance but is instead a counteroffer that rejects the original offer. *Strong & Trowbridge Co. v. H. Baars & Co.*, 54 So. 92, 93-94 (Fla. 1910); *see Breger v. Robshaw Custom Homes, Inc.*, 264 So. 3d 1147, 1150 (Fla. 5th DCA 2019). If the parties are still negotiating the essential terms of the contract, there is no meeting of the minds. *See Webster Lumber Co. v. Lincoln,* 115 So. 498 (Fla. 1927); *see also de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 681 (Fla. 1st DCA 2007).

Here, because there was no meeting of the minds as to all of the material terms, no settlement agreement was formed. In arriving at its conclusion that a valid contract was formed when Suarez filed a written notice accepting Souders' settlement offer, the majority glossed over a significant factual component that impeded such a conclusion under contract law: After Souders made his initial offer, Suarez's counsel contacted Souders' counsel and asked that the settlement agreement provide that the lien issued by the workers' compensation carrier (Guarantee Insurance Company) be paid from the proceeds of the settlement check. Souders

unequivocally refused the request.[2]  Despite Souders's refusal, Suarez issued a settlement check that included Guarantee as a payee and filed a notice of acceptance with the court.[3]

In the context of contract negotiations, Suarez's request to include Guarantee on the settlement check constituted a counteroffer which voided the initial offer and was ultimately rejected by Souders.  Thus, at the time the acceptance was filed, there was no meeting of the minds as to who would be paid—meaning that there was no binding settlement agreement.  Even if the request were not a counteroffer, Souders' rejection and Suarez's subsequent inclusion of Guarantee as a payee evinces that the parties were still negotiating who to include as payee, and thus,

---

2.  The inclusion of the worker's compensation carrier (Guarantee) as a payee on the settlement check would have required Souders to negotiate the amount of the lien with Guarantee before he could cash the settlement check—a step Souders clearly did not want to take at that time.

3.  In the inverse situation, where the parties have not met the requirements of section 768.79 and rule 1.442, but have met the common law requirements for contract formation, the parties would be unable to exercise the benefits of the statute, but would still have an extrajudicial private settlement contract enforceable as a matter of contract law.

there was no meeting of the minds. Therefore, there was no contract formation.

In determining that the parties formed a binding settlement agreement upon Suarez's notice of acceptance, the majority notes that "[t]he [section 768.79 and rule 1.442] framework contemplates that a filed acceptance constitutes a promise to perform in accordance with the terms of the offer." Majority op. at 4. However, herein lies the problem in this case; there was no meeting of the minds as to a material term of the offer—whether Guarantee should be included as a payee on the settlement check. In short, the parties did not agree as to who should be included in the settlement check as a payee—a material term of the contract.[4] It would be a rare circumstance indeed where the identity of the payee or payees of a settlement check would not be considered a material term of

---

4. Although insurance carriers enjoy an automatic lien in a settlement with a third-party tortfeasor, the workers' compensation statute clearly contemplates further negotiations and proceedings in the execution of the lien. *See* §§ 440.39(a)-(b), Fla. Stat. (2014). By including Guarantee on the check, Suarez effectively created a de facto lien that could affect those negotiations. With these consequences in mind, the payee on the check should be considered a material term of the settlement agreement.

the settlement agreement, and without an agreement as to all of the material terms of the offer, there can be no valid acceptance or promise to perform in accordance with those terms. *See Suarez Trucking FL Corp. v. Souders*, 311 So. 3d 263, 269 ("[T]he provisions of section 768.79(4) . . . do not negate the fact that contract law governs settlement agreements") (citing *Lunas v. Cooperativa de Seguros Multiples de Puerto Rico*, 100 So. 3d 239, 241 (Fla. 2d DCA 2012)). Thus, reliance on the statute/rule framework to determine the enforceability of the parties' settlement agreement is not as "simple and straightforward" as the majority opinion suggests. Majority op. at 4.

Notwithstanding the majority's reliance on rule 1.442(f)(1), which provides that "[n]o oral communications shall constitute an acceptance, rejection, or counteroffer under the provisions of this rule," that provision only applies to the court's authority to ratify and enforce the settlement agreement. Neither it nor section 768.79 alters the requirements for the valid formation of the settlement agreement:

> By conferring jurisdiction to enforce an agreement upon the trial court only after both an offer and acceptance have been filed with the court, the statute prevents the

trial court from enforcing an agreement based only on a party's assertion that it accepted the offer. *The statute does not, however, <u>require</u> the trial court to enforce a contract simply because a written acceptance has been filed. The trial court must still evaluate that acceptance as evidencing a meeting of the parties' minds.*

*Suarez*, 311 So. 3d at 269 (emphasis added). Although this language was stated in the context of the Second District's erroneous "mirror image" rule analysis, the court's understanding of the statute is otherwise valid. Accordingly, rule 1.442(f)(1) does not restrict a court from considering the communications between Suarez and Souders in evaluating the enforceability of the settlement agreement. Here, the parties' communications illustrate that there was no meeting of the minds and no formation of a settlement agreement.

By prioritizing compliance with section 768.79 and rule 1.442 over the formation of a valid settlement agreement, the majority risks minimizing the safeguards of contract law in favor of a purely formalistic framework, and in turn, leaves open the possibility of the troublesome scenario set forth in the Second District's opinion:

> Holding that the trial court should have granted that motion would allow offerees to file boilerplate notices of acceptance and subsequently alter the required performance as they see fit. But an offeror who complies

- 27 -

with the strict requirements of the statute and the rule concerning proposals for settlement and offers of judgment should not be bound to comply with the terms of an agreement unilaterally created by the offeree simply because the offeree first filed a boilerplate notice of acceptance. Such a result is untenable.

*Suarez*, 311 So. 3d at 271.[5]

For these reasons, I would hold that because there was no meeting of the minds as to all of the terms of the settlement agreement, and thus no contract formation, the settlement agreement was unenforceable.

I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal Direct Conflict of Decisions

    Second District - Case No. 2D19-572

    (Hillsborough County)

Kansas R. Gooden of Boyd & Jenerette, Miami, Florida, and Stuart J. Freeman of Freeman, Goldis & Cash, PA, St. Petersburg, Florida,

    for Petitioner Suarez Trucking Fl Corp

Daniel A. Martinez and Jennifer C. Worden of Segundo Law Group, St. Petersburg, Florida,

---

5. This risk is especially relevant here, where the record reveals that after the offer and before acceptance, the parties disagreed as to whether the settlement agreement should include satisfaction of Guarantee's lien from the settlement check.

for Petitioner Progressive Express Insurance Company

Joel D. Eaton of Podhurst Orseck, P.A., Miami, Florida, and Chris M. Kavouklis of Brennan, Holden & Kavouklis, P.A., Tampa, Florida,

for Respondents

Thomas L. Hunker and V. Ashley Paxton of Hunker Appeals, Fort Lauderdale, Florida, and Elaine D. Walter of Boyd Richards Parker & Colonnelli, P.L., Miami, Florida,

for Amicus Curiae Florida Defense Lawyers Association